STAHL, Senior Circuit Judge,
concurring in the judgment.
I agree with my colleagues in the majority that Jason Pacheco’s trial for cocaine conspiracy was not conducted in accordance with the requirements of the Due Process Clause. I also agree that this case must be remanded to the district court for a new trial. I write separately because my view of the solution is somewhat different from that of the majority.
I.
In December 2001, Pacheco was indicted together with twenty co-defendants on one count of conspiring to possess cocaine with *118 intent to distribute.[5] He was tried separately from the others. At trial, the government presented evidence of a complex operation involving one kingpin, Rafael Yeje-Cabrera, and numerous aides, underlings, couriers, and dealers. Pacheco’s alleged role was that of a dealer.
At the close of the evidence, Pacheco moved for a directed verdict, arguing that the prosecution had not carried its burden of proof.[6] The district court denied the motion in part and granted it in part, indicating that the government had shown, at most, that Pacheco was a participant in a small “spoke” conspiracy, rather than part of the overarching “hub” conspiracy headed by Yeje-Cabrera.[7] The court’s ruling on Pacheco’s motion (“the Rule 29 order”) was entered on the docket. The judge then submitted the case to the jury without telling them anything about his ruling. The jury returned a verdict of guilty, specifying on the verdict sheet that they attributed “more than five kilograms of cocaine” to Pacheco.[8]
II.
On appeal, Pacheco argues that the district court’s Rule 29 order acquitted him, at least partially, of the charges against him. The judge’s later submission of the case to the jury, the argument continues, placed Pacheco in jeopardy for a crime of which he had already been acquitted, in violation of the Double Jeopardy Clause.[9] We are thus called upon to determine whether and to what degree the defendant’s jeopardy ended when the district court entered its order.[10] See Gonzalez v. Justices of the Mun. Ct., 382 F.3d 1, 10 (1st Cir.2004), vacated, — U.S. —, 125 S.Ct. 1640, 161 L.Ed.2d 474 (2005) (mem.), reinstated, 420 F.3d 5 (1st Cir. *119 2005). The majority concludes that Pacheco’s appeal fails because the district court’s order did not constitute an acquittal, and so the defendant’s original jeopardy was never terminated. I reach the same conclusion, but by a different route from that taken by my colleagues.
A.
The question of how to characterize the district court’s order “is a difficult one and is probably not susceptible to an abstract answer unrelated to context.” United States v. Oreto, 37 F.3d 739, 748 (1st Cir.1994). The majority opinion lists three reasons for its conclusion: (1) the district court denominated the order as “partial,” (2) the court denied the defendant’s concurrent motion for a required finding of not guilty, and (3) after giving its order, the court then sent the case to the jury. All three of these reasons boil down to the same idea: the district court acted like the order was not a complete acquittal as to the crime charged, so there was no acquittal. I question at least two aspects of this appraisal.
First, the fact that the judge sent the case to the jury, in particular, cannot logically be considered evidence that the Rule 29 order was not an acquittal. This is because the defendant’s argument on appeal is that the act of sending the case to the jury, itself, constituted a Double Jeopardy violation, because that act followed an acquittal. To say that because the judge submitted the defendant to post-order fact-finding by a jury, therefore he did not acquit the defendant in the first place, is circular reasoning.[11]
Second, the majority opinion implies, and I agree, that it would have been lawful, under the terms of this indictment, for the jury to convict the defendant solely of participation in the smaller “spoke” conspiracy. See United States v. Miller, 471 U.S. 130, 131, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985) (upholding conviction “based on trial proof that supports only a significantly narrower and more limited, though included, fraudulent scheme” than that alleged in the indictment). See also United States v. North, 86 Fed.Appx. 427, 433 (1st Cir.2004) (vacated on other grounds, 543 U.S. 1099, 125 S.Ct. 1022, 160 L.Ed.2d 994 (2005)) (“A perfect alignment between the indictment’s charge and the offense conduct of conviction is not required .... as long as the trial proof corresponds to an offense which was clearly set out in the indictment.”) (citing Miller, 471 U.S. at 136, 105 S.Ct. 1811); United States v. Portela, 167 F.3d 687, 702 (1st Cir.1999) (approving of jury instruction that limited duration of conspiracy to scheme narrower than, but included within, scheme alleged in indictment).
I believe it is inconsistent to argue both that (1) the defendant could have been convicted of either conspiracy and (2) it was impossible for the district court to have granted a partial acquittal. Moreover, “[t]he appropriate inquiry is functional, not semantic. Thus, an inquiring court is duty bound to ascertain ‘whether the ruling of the judge, whatever its label,’” counts as an acquittal for Double Jeopardy purposes. Gonzalez, 382 F.3d at 10 (quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)). It is therefore inappropriate to rely on the district court’s *120 own descriptions of its action as dispositive of the import of that action.
B.
My analysis of whether the Rule 29 order was an acquittal begins with the definition of “acquittal” set out by the Supreme Court in Martin Linen and recently restated in Smith. The Court has defined an acquittal, for Double Jeopardy purposes, to include a court order that “actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.” Smith, 125 S.Ct. at 1134 (quoting Martin Linen, 430 U.S. at 571, 97 S.Ct. 1349). I do not think the district court’s partial grant of the defendant’s motion for a directed verdict, despite the order’s nomenclature and its invocation of Rule 29,[12] meets this definition of acquittal.
It is evident from the discussion that took place at the hearing on Pacheco’s motion for a directed verdict that the judge drew a distinction between a large “hub” conspiracy headed by Yeje-Cabrera and a smaller “spoke” conspiracy that Pacheco was allegedly involved in. The judge stated his belief that the prosecution had failed to present sufficient evidence to prove Pacheco was a member of the overarching “hub” conspiracy.[13] He also presumed that the overarching conspiracy could be eliminated from the picture while leaving the smaller conspiracy charge in place to be sent to the jury.[14]
A criminal conspiracy is both defined and confined by the unlawful agreement at its heart. See Braverman v. United States, 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942); see also United States v. Glenn, 828 F.2d 855, 857 (1st Cir.1987) (“[Cjonspiracy law, like most criminal law, focuses upon the activities of an individual defendant. It is therefore dangerous to think of a conspiracy as a kind of “club” that one joins.... Instead, the gist of the conspiracy offense remains the agreement, and it is therefore essential to determine what kind of agreement or understanding existed as to each defendant.”) (internal quotation marks and alterations omitted). Pacheco was tried separately from the other defendants named in the indictment. It was up to the jury to determine what sort of any unlawful agreement, if any, Pacheco himself was guilty of making. Although not every conspiracy Pacheco might have participated in was covered by the language of the indictment, that language was broad enough to cover more than one possible agreement.
*121 To my mind, the most apt characterization of the “hub” conspiracy and the “spoke” conspiracy is to describe them as two different prosecution theories of the case. The district court could have, and probably intended to, take one of the two theories off the table for insufficient proof.[15] Cf. United States v. O’Shea, 426 F.3d 475, 479 n. 3 (1st Cir.2005) (describing how district court ruled the evidence was insufficient to sustain one of the prosecution’s theories of the case and accordingly instructed the jury on only the remaining theory). It is perfectly plausible to read Martin Linen’s requirement of “a resolution, correct or not, of some or all of the factual elements” to apply to a discrete prosecutorial theory, as well as to an individual charge in the indictment. In the present case, however, the court did not adequately distinguish the two theories, and the defendant did not point us to anyplace in the record where the distinction was laid out, for us, on appeal, to be able to say that there was an acquittal on one of the theories. Practically speaking, I cannot see how we could send the case back for a new trial on the “spoke” theory but not on the “hub” theory. We simply do not know enough about the difference between the two alleged conspiracies.
III.
In my view, a partial acquittal on a single-count indictment is a theoretically possible outcome. It simply did not happen here. However, I agree with the majority that the transpiration of events at Jason Pacheco’s trial violated the requirements of the Due Process Clause. I therefore concur in the judgment of the court granting the defendant a new trial.

. The indictment read as follows:
From a date unknown to the Grand Jury, but from at least on or about July 7, 2000, and continuing thereafter until on or about December 20, 2001, at Westport, elsewhere in the District of Massachusetts, in the District of New York, in the District of Arizona, in the District of Tennessee, and elsewhere, [twenty named individuals and],
21. JASON PACHECO, defendants herein, did knowingly and intentionally combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury, to possess with intent to distribute, and to distribute, more than 5 kilograms of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

. The defendant’s motion was originally made in written form and was entitled "Motion for a Directed Verdict.” As the majority notes, the procedural device formerly termed a motion for directed verdict has been replaced with the motion for a judgment of acquittal. See Fed.R.Crim.P. 29. The district court and the parties used the "directed verdict” language as well as referring directly to Rule 29.

. Much evidence about the Yeje-Cabrera conspiracy, which was responsible for hundreds of kilograms of cocaine, had been introduced at trial; the evidence linking Pacheco to any cocaine was much more limited.

. The peculiar sequence of motions and orders that followed the jury verdict is ably laid out in the majority opinion.

. "Subjecting the defendant to post-acquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause.” Smith v. Massachusetts, 543 U.S. 462, 125 S.Ct. 1129, 1134, 160 L.Ed.2d 914 (2005) (quoting Smalis v. Pennsylvania, 476 U.S. 140, 145, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986)).

. I note that the ruling was (a) made in response to the defendant’s written motion and after a hearing was held, (b) discussed by the court in the context of Rule 29, and (c) entered on the docket on March 24, 2003. The fact that the ruling was made in response to a formal motion by the defendant is at odds with the majority's characterization of the district court’s order as a mere "comment on evidentiary sufficiency.”

. There is no doubt that the district court's actions in this case were unusual and perplexing. An unusual turn of events in a trial courtroom does not, of course, preclude a determination that the events did not offend the Constitution. Nor is the constitutional violation mitigated just because the judge’s order was legally erroneous. See Sanabria v. United States, 437 U.S. 54, 64, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

. That rule stales that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.” Fed.R.Crim.P. 29. The district court evidently intended to act under Rule 29. The judge stated, for example, "I'm telling you under Rule 29 I'm directing down to the little [conspiracy].”

. Later, at the sentencing hearing, the judge reiterated, "[A]t trial I became satisfied ... that you were not part of some overarching 260 kilogram conspiracy. And that's why I gave the partial directed verdict.”

.That this was the judge's view is made clear from the following statement made by the judge to the prosecutor:
THE COURT: Mr. Wilson [(defense counsel)] is not wrong when he talks about conspiracies within conspiracies. On [the government’s] best evidence I think we have this. Here is the, what I’ll call the Cabrera conspiracy. On your best evidence here’s the Pacheco conspiracy.... Now, the conspiracy for which Mr. Pacheco is liable, if everything goes your way, is this [spoke] conspiracy. That's what he's in on.... [A]gainst his motion for directed verdict that's the conspiracy you've proved. You’ve proved no more. We're not having any more.

. The district court would also, of course, have been within its power to exclude irrelevant evidence (e.g. evidence not going to an unlawful agreement made by Pacheco himself) or to knock the indictment down to a lesser included charge if it found the government had failed to prove the charged offense. See Fed.R.Crim.P. 31(c); Schmuck v. United States, 489 U.S. 705, 716-17, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). However, that is not what happened here. The district court was not persuaded by defense counsel's argument that the government had failed to prove the requisite five kilograms of cocaine. Counsel and the court discussed, but did not resolve, the question whether conspiracy to possess 500 grams of cocaine was a lesser included offense of the charged five-kilogram conspiracy-