NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0630n.06

No. 12-4338

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

   Plaintiff-Appellee,

v.

DERRICK JOHNSON,

   Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

FILED
Aug 14, 2014
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

Before: SUHRHEINRICH, KETHLEDGE, and WHITE, Circuit Judges.

KETHLEDGE, Circuit Judge. Derrick Johnson was a founding member of the LSP street gang, which sold drugs on the south side of Youngstown, Ohio. A jury convicted Johnson of RICO conspiracy and numerous other gang-related, weapons, and drug offenses. The district court sentenced Johnson to a term of 65 years in prison. Johnson now appeals his convictions. We affirm.

I.

Johnson was one of 23 people charged in 2011 after a prolonged investigation targeting LSP. The gang's origins and activities are described in greater detail in *United States v. Hackett*, __ F.3d __ (6th Cir. 2014), a case involving one of Johnson's co-defendants. The facts below suffice for Johnson's appeal.

LSP was named after three streets—Laclede, Sherwood, and Parkview—in the neighborhood where its members lived. The gang's original members, including Johnson,

Daquann Hackett, and others, were childhood friends from that neighborhood. LSP competed with other gangs—in particular, the Circle Boyz—for the neighborhood drug trade. This competition sometimes escalated into drive-by shootings of rival gang members.

Johnson, in particular, had a reputation for violence. He was a regular participant in drive-by shootings, including the shooting of a neighborhood youth, Sherrick Jackson, who "didn't get along" with LSP. Johnson also helped Hackett and Terrance Royal (another LSP member) nearly beat to death a confidential informant, Reuben Robinson, after Hackett discovered that Robinson was wearing a wire.

A grand jury indicted Johnson and many other LSP members for a litany of gang, drug, and weapons offenses. Johnson went to trial, where the government called Detective Sergeant Michael Lambert, the lead investigator in the Youngstown Police Department's case against LSP. Initially, Lambert testified as an expert on gangs. He described the culture of Youngstown gangs and the ways that members signaled their gang affiliation and marked their territory. Then the government asked Lambert about LSP specifically. For the remainder of his time on the stand, Lambert testified as a fact witness based on his investigation of the gang.

Approximately two weeks later, Lambert returned to the stand, testifying this time only as a fact witness. Lambert described the beating of Robinson and the police department's later search of the house where the beating took place. Finally, the government asked Lambert to describe an interview in which Hackett self-identified as a member of LSP and admitted that the gang had an ongoing feud with the Circle Boyz.

The jury convicted Johnson of RICO conspiracy in violation of 18 U.S.C. § 1962(d), three counts of Violent Crimes in Aid of Racketeering (VICAR) in violation of 18 U.S.C. § 1959(a)(5), retaliation against a government witness in violation of 18 U.S.C. § 1513(a)(1)(B),

two counts of using or carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c), and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841. This appeal followed.

II.

A.

Johnson's first two arguments concern Sergeant Lambert's expert testimony.

1.

Johnson argues that the government violated Federal Rule of Criminal Procedure 16 when it failed to provide him a summary of Sergeant Lambert's testimony in a timely manner. Rule 16(a)(1)(G) requires that the government turn over, at the defendant's request, a summary of any expert testimony that the government intends to use during its case-in-chief. Here, Johnson requested the expert summary on March 30, 2011. The government provided a summary of Lambert's testimony over a year later, on May 28, 2012—nine days before trial. Johnson objected to the proposed testimony on several grounds and requested that the court postpone the trial to allow Johnson time to hire his own expert. The court overruled Johnson's objection and refused to postpone the trial. Johnson now argues that decision was fundamentally unfair. We review the district court's refusal to grant a postponement for an abuse of discretion. *United States v. Marrero*, 651 F.3d 453, 473 (6th Cir. 2011).

The government's response to Johnson's request for an expert summary was far from prompt. But Rule 16(a)(1)(G) "does not specify *when* the government must produce the [expert] summary[.]" *United States v. Harris*, 200 F. App'x 472, 504 (6th Cir. 2006) (emphasis in original). The Rule does not, for example, specify whether the government must produce the expert disclosure "a certain number of days after the defendant's request, before the trial starts,

or before the expert testifies." *Id.* Here, the district court reasoned that a continuance was unwarranted because it "would have been readily apparent" from the indictment that the government was likely to introduce expert testimony about gangs in Youngstown. Johnson gives us no reason to second-guess that assessment. Johnson therefore had over a year to find a defense expert on Youngstown's gang culture if he thought he needed one. Moreover, Johnson nowhere explains—not here, and not before the district court—how a defense expert would have refuted Lambert's testimony except to say that the expert would have offered "different interpretations on gangs." So this argument provides no ground for relief.

Johnson also suggests that the district court's refusal to postpone the trial left him without enough time to prepare to cross-examine Lambert. But Johnson told the district court that he needed more time to find an expert, not that he needed more time to prepare for cross-examination. And Johnson does not explain here why he could not prepare for cross-examination in the nine days afforded him before trial. The district court did not abuse its discretion by refusing to postpone the trial.

2.

Johnson next argues that the district court did not take the precautions necessary to allow Sergeant Lambert to testify as both a fact and expert witness at trial. A witness may "testify as both a fact witness and an expert witness so long as there is either a cautionary jury instruction regarding the witness's dual roles or a clear demarcation between the witness's fact testimony and expert-opinion testimony." *United States v. Nixon*, 694 F.3d 623, 629 (6th Cir. 2012). Johnson argues that there was neither an instruction nor a demarcation here. But Johnson did not make this argument to the district court, so we review for plain error. *United States v. Willoughby*, 742 F.3d 229, 236 (6th Cir. 2014).

At trial, Lambert first testified as an expert on Youngstown gangs, describing the ways in which gang culture in Youngstown had evolved over the last two decades, and explaining how gangs used intimidation and violence to maintain control over their territory. Then—without a break—Lambert testified as a fact witness regarding the LSP investigation. Lambert described how the Youngstown Police Department began its investigation of LSP, the evolution of the gang's membership and activities, and LSP's conflicts with rival gangs. Indeed, Lambert's fact and expert testimony sometimes blended together, when he described facts that he learned during the investigation and then applied his expert knowledge to those facts. For example, Lambert testified about the graffiti in LSP's neighborhood, and then opined that LSP used graffiti to intimidate rival gangs. The complete lack of demarcation between Lambert's fact and expert testimony, combined with the absence of a curative instruction, was an error that was obvious or plain. *See United States v. Lopez-Medina*, 461 F.3d 724, 745 (6th Cir. 2006).

But Johnson must also show that the error affected his substantial rights. *See Willoughby*, 742 F.3d at 236. "The potential problems with dual-character testimony are two-fold." *Id.* at 239. "First, absent a proper instruction, the jury might determine the witness's credibility in gross, so to speak, and thus think that his opinions—which in some cases might be relatively speculative—are just as reliable as his factual statements[.]" Second, "the jury might think that the witness's role as a fact witness somehow enhances his credibility as an expert, or vice-versa." *Id.*

Neither of these concerns was present here, and for the same reasons: Lambert's factual testimony was uncontroversial, and his expert testimony was corroborated by numerous other witnesses. For example, Lambert described how gangs used graffiti to project a violent image; Robinson testified that LSP "marked [its] territory" so "you wouldn't come there selling."

Lambert explained that "respect" was important to gang members because "if one member of the gang w[as] seen as weak" that would "impact [] the reputation of the gang as a whole"; LSP members, including Shawn Jones and Terrance Royal, testified to the importance of respect in LSP. Lambert described how a member's status could depend in part on whether he supplied drugs to other members; witnesses testified that Hackett had the "most say so" because he controlled LSP's supply of crack cocaine. Thus, the omission of a cautionary instruction as to Lambert's dual role did not affect Johnson's substantial rights.

B.

Johnson's final argument is that the district court constructively amended the indictment. Specifically, Counts 7 and 32 of the indictment charged Johnson with "knowingly us[ing] and carry[ing] a firearm during and in relation to a crime of violence," *see* 18 U.S.C. § 924(c). Similarly, Count 31 charged Johnson with attempting to murder Reuben Robinson "for the purpose of maintaining and increasing [his] position in LSP," *see* 18 U.S.C. § 1959(a). The verdict forms originally used the same conjunctive ("and") language. But the jury instructions (and the statutes themselves) are written in the disjunctive—allowing the jury to convict if Johnson knowingly used "or" carried a firearm, and if he attempted to murder Robinson to maintain "or" increase his position in LSP. After the jury questioned this discrepancy, the court changed the verdict forms to match the jury instructions. Johnson now argues that the court constructively amended the indictment when it substituted the disjunctive "or" for the conjunctive "and" in the jury instructions and verdict forms.

We review constructive-amendment claims de novo. *United States v. Kuehne*, 547 F.3d 667, 682-83 (6th Cir. 2008). A constructive amendment occurs when a discrepancy between the indictment and the jury instructions creates "a substantial likelihood that the defendant may have

been convicted of an offense other than the one charged in the indictment." *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007) (quotation omitted). Constructive amendments are "per se prejudicial because they infringe on the Fifth Amendment's grand jury guarantee." *Kuehne*, 547 F.3d at 683 (internal citations and quotations omitted).

According to Johnson, the disjunctive jury instructions and verdict forms broadened the basis for a conviction beyond what the indictment alleged. But an "indictment count that alleges in the conjunctive a number of means of committing a crime can support a conviction if any of the alleged means are proved." *United States v. Miller*, 471 U.S. 130, 105 (1985) (citation omitted). Thus, a constructive amendment "does not occur when, although an indictment charges several acts in the conjunctive, the district court charges the jury in the disjunctive." *United States v. Hathaway*, 798 F.2d 902, 913 (6th Cir. 1986); *see also United States v. McAuliffe*, 490 F.3d 526, 534 (6th Cir. 2007). Johnson's argument is therefore without merit.

\*    \*    \*

The district court's judgment is affirmed.