[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11428
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cr-00192-ODE-AJB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDERICK JENKINS,
WILLIE JENKINS,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(July 21, 2017)

Before TJOFLAT, MARCUS, and WILSON, Circuit Judges.

PER CURIAM:

Frederick Jenkins and Willie Jenkins, brothers who ran a tax-preparation company, were convicted of conspiring to prepare fraudulent tax returns on behalf of certain clients and of willfully preparing fraudulent returns on behalf of the clients. The district court sentenced Frederick to 78 months' imprisonment and Willie to 75 months' imprisonment, and it ordered them to pay $3.5 million in restitution.

Frederick and Willie now appeal their convictions and sentences. They argue that the district court erred by (1) constructively amending their indictment, (2) limiting Frederick's cross-examination of a government witness, (3) allowing them to proceed pro se at sentencing, (4) determining that they are responsible for more than $3.5 million in tax loss, and (5) requiring them to pay $3.5 million in restitution. After careful consideration of the record and the parties' briefs, we affirm in part, vacate in part, and remand for resentencing. We affirm Frederick's and Willie's convictions. But we vacate their sentences because the district court erred in finding that they are responsible for more than $3.5 million in tax loss and in ordering $3.5 million in restitution.

## I. CONSTRUCTIVE AMENDMENT

The Fifth Amendment prohibits the district court from constructively amending an indictment. *See United States v. Keller*, 916 F.2d 628, 632–33 (11th Cir. 1990). The district court constructively amends an indictment if it alters "the

essential elements of the offense contained in the indictment . . . to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v. Narog*, 372 F.3d 1243, 1247 (11th Cir. 2004) (citing *Keller*, 916 F.2d at 634). But it does not constructively amend an indictment when it ignores "[a] part of the indictment unnecessary to and independent of the allegations of the offense." *See United States v. Miller*, 471 U.S. 130, 136, 105 S. Ct. 1811, 1815 (1985). In other words, the district court may ignore parts of an indictment that are "merely surplusage." *See id.* at 137, 105 S. Ct. at 1815 (internal quotation marks omitted).

The district court did not constructively amend Frederick and Willie's indictment—it ignored a part of the indictment that was mere surplusage. Frederick and Willie argue that the district court constructively amended their indictment because, although the indictment alleged that they prepared fraudulent tax returns on behalf of several clients "without the [clients]' knowledge and consent," the court instructed the jury that the government did not have to prove the clients lacked knowledge and consent. However, the indictment's allegations about the clients' knowledge and consent were "unnecessary to the offense[s]" contained in the indictment. *See id.*, 105 S. Ct. at 1815. The indictment alleged that Frederick and Willie conspired to prepare fraudulent tax returns and that they willfully prepared fraudulent tax returns. As Frederick's attorney conceded at trial, whether the clients knew that the tax returns contained fraudulent information was

3

irrelevant to these offenses; only Frederick's and Willie's mens rea was relevant. The allegations about the clients' knowledge and consent, then, "would have had no legal relevance if proved."[1]  *See id.*, 105 S. Ct. at 1815.

## II. LIMITING CROSS-EXAMINATION OF A GOVERNMENT WITNESS

Although the district court has "the power to limit" a defendant's cross-examination of a government witness, the court's "discretion is limited by the guarantee of the Sixth Amendment's Confrontation Clause that a criminal defendant has the right to cross-examine prosecutorial witnesses." *United States v. Maxwell*, 579 F.3d 1282, 1295 (11th Cir. 2009) (internal quotation marks omitted). Under the Confrontation Clause, a defendant is entitled to "an opportunity for effective cross-examination." *Id.* at 1296 (internal quotation marks omitted). And the district court may not limit a defendant's cross-examination if "a reasonable jury would have received a significantly different impression of the witness'[s testimony] had [the defendant] pursued the proposed line of cross-examination." *United States v. Garcia*, 13 F.3d 1464, 1469 (11th Cir. 1994).

The district court did not err in limiting Frederick's cross-examination of a government witness.  Frederick and Willie had an opportunity for effective cross-examination of the witness.  Frederick and Willie argue that the district court

---

[1] As an alternative to their constructive-amendment argument, Frederick and Willie argue that the government's evidence at trial materially varied from the indictment.  That argument, however, is unavailing.

4

violated their Sixth Amendment rights because the court, after questioning the relevance of Frederick's cross-examination of the witness, limited the examination to ten additional minutes.  The district court's decision to limit the cross-examination, Frederick and Willie contend, prevented them from eliciting testimony suggesting that they did not file certain tax returns.  But based on our review of the record, Frederick questioned the government witness about the tax returns at length and elicited helpful testimony.  We cannot conclude that "a reasonable jury would have received a significantly different impression" of the witness's testimony had the district court not limited Frederick's cross-examination.  *See id.*

## III. WAIVER OF RIGHT TO COUNSEL

When a defendant seeks to waive his right to counsel, the district court must satisfy itself that the defendant is competent to do so, and it must satisfy itself that the defendant's waiver is knowing and voluntary.  *See Godinez v. Moran*, 509 U.S. 389, 400, 113 S. Ct. 2680, 2687 (1993).   A defendant is competent to waive his right to counsel if he meets the standard for competency to stand trial—that is, if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Id.* at 396, 113 S. Ct. at 2685 (internal quotation marks omitted).  A defendant's waiver is knowing and voluntary if he is "made

5

aware of the dangers and disadvantages of self-representation" such "that he knows what he is doing and his choice is made with eyes open." *United States v. Kimball*, 291 F.3d 726, 730 (11th Cir. 2002) (per curiam) (internal quotation marks omitted).

The district court did not err in allowing Frederick and Willie to proceed pro se at sentencing. The court did not have cause to believe that Frederick and Willie were not competent to waive their counsel, and prior to their waiver, the court "made [them] aware of the dangers and disadvantages of self-representation." *See id.* (internal quotation marks omitted).

First, no information arose during Frederick and Willie's proceedings that established a "bona fide doubt regarding the[ir] competence." *See United States v. Wingo*, 789 F.3d 1226, 1235–36 (11th Cir. 2015) (internal quotation marks omitted). We look to three factors in determining whether information arose at trial that established a bona fide doubt about competence: "(1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor at trial; and (3) prior medical opinion regarding the defendant's competence . . . ." *Id.* at 1236 (internal quotation marks omitted). Considering these factors, we cannot conclude that a bona fide doubt about competency existed here. Frederick and Willie made a few irrational statements when they requested to waive counsel, but at that time they also engaged in colloquy with the court that reflected a rational understanding of

6

the proceedings.  Further, neither Frederick's nor Willie's demeanor during their weeklong trial signaled incompetence, and their counsel never raised any concerns about competency.  Finally, no prior medical opinions suggested competency issues.

Second, Frederick and Willie knowingly and voluntarily waived counsel at sentencing.  The district court informed them that the sentencing process is complex and requires technical analysis, including examining the Sentencing Guidelines; that navigating the sentencing process without counsel would be difficult; that, in the opinion of the court, waiving counsel was a mistake; and that they faced prison sentences.  With the benefit of this information, Frederick and Willie, without equivocating, decided to waive counsel.  Indeed, they even rejected the district court's offer to appoint them new counsel.  Frederick and Willie decided to waive counsel voluntarily and "with eyes open."  *See Kimball*, 291 F.3d at 730 (internal quotation marks omitted).

## IV. AMOUNT OF TAX LOSS

The government, in asking the district court to adopt a certain tax-loss calculation at sentencing, "must establish the facts by a preponderance of the evidence and support the loss calculation with reliable and specific evidence." *United States v. Cobb*, 842 F.3d 1213, 1219 (11th Cir. 2016).  If the defendant's "offense involved the filing of . . . fraudulent or false tax return[s], the tax loss is

the total amount of loss that was the object of the offense . . . ."  *United States v. Clarke*, 562 F.3d 1158, 1164 (11th Cir. 2009) (citing U.S.S.G. § 2T1.1(c)(1)). When determining the scope of the offense, the district court should consider "all conduct violating the tax laws . . . as part of the same course of conduct or common scheme or plan."  U.S.S.G. § 2T1.1 cmt. n.2.

The district court erred in finding that Frederick and Willie are responsible for more than $3.5 million in tax loss.  The court's finding was based on its conclusion that Frederick and Willie willfully prepared hundreds of fraudulent tax returns, but the government failed to prove that by a preponderance of the evidence.  *See Cobb*, 842 F.3d at 1219.

## A. RELEVANT BACKGROUND

At trial the government offered evidence that Frederick and Willie prepared 16 fraudulent tax returns.  The evidence showed that each of the 16 returns reported fraudulent business expenses on a Schedule C, namely non-existent advertising and office expenses; claimed business losses; and sought a tax refund. Based on that evidence, Frederick and Willie were convicted on one count of conspiring to prepare fraudulent tax returns and on several counts of willfully preparing fraudulent returns.

At sentencing the government, seeking to establish that Frederick and Willie are responsible for hundreds of additional fraudulent tax returns, offered the

8

testimony of an Internal Revenue Service (IRS) agent who reviewed a sampling of tax returns that Frederick and Willie's company prepared. The agent reviewed 283 returns with Schedule Cs, which was 10% of the returns with Schedule Cs that the company prepared during a certain time period, and he found that 228 of those returns reported business losses and requested a refund. Many of the 228 returns also reported advertising and office expenses. The 228 returns, in total, reported around $5 million in business losses. The remaining 55 returns reported business profits.

According to the government, the similarities between the 228 tax returns and the 16 fraudulent returns from trial established not only that all the 228 returns were fraudulent but also that many other returns prepared by Frederick and Willie were likely fraudulent. So the government asked the district court to calculate the tax loss attributable to Frederick and Willie by extrapolating from the $5 million in business losses reported by the 228 returns.

The government recommended a three-step calculation process. First, because the IRS agent reviewed just 10% of returns with a Schedule C, multiply the $5 million in business losses by 10 to estimate the total business losses reported by Frederick and Willie. Second, multiply the resulting $50 million in estimated business losses by 28% since, under the Sentencing Guidelines, a defendant's tax loss should be treated as equal to 28% of improperly claimed deductions "unless a

more accurate determination of the tax loss can be made." *See* U.S.S.G. § 2T1.1(c)(1)(B). Multiplying $50 million by 28% results in around $14 million in estimated tax loss. Third, to afford Frederick and Willie the benefit of the doubt that some of the returns reporting business losses were legitimate, cut the $14 million in estimated tax loss in half to $7 million.

The district court ultimately found that Frederick and Willie are responsible for more than $3.5 million in tax loss and therefore applied to them a base offense level of 24. *See* § 2T4.1(J), (K) (establishing 24 as the base offense level for an offense involving tax loss greater than $3.5 million but less than $9.5 million). The court noted that it is "very difficult" to identify the amount of tax loss attributable to Frederick and Willie, but it nevertheless was "comfortable saying that the loss" is above $3.5 million.

## B. ANALYSIS

The district court erred in concluding that Frederick and Willie are responsible for more than $3.5 million in tax loss. To establish that Frederick and Willie are responsible for more than $3.5 million in tax loss, the government had to at a minimum prove by a preponderance of the evidence that they engaged in illegal conduct beyond preparing the 16 fraudulent tax returns identified at trial. The government failed to make such a showing.

10

The government argued that Frederick and Willie's relevant "course of conduct" included willfully preparing not only the 16 fraudulent tax returns but also hundreds of additional fraudulent returns. *See* § 2T1.1 cmt. n.2. But the only evidence it offered in support thereof was the IRS agent's testimony, and the testimony did not show that Frederick and Willie willfully prepared additional fraudulent returns. The agent did not identify any returns containing fraudulent information; the agent, for example, did not identify any returns that included non-existent advertising or office expenses. The agent did not even state that, in his opinion, the returns he analyzed included suspicious information. Nor did the agent testify that he believed the returns he analyzed included patterns indicative of fraud. The agent merely testified that Frederick and Willie's company filed a number of returns that shared certain characteristics with the 16 fraudulent returns—characteristics such as reported business losses and requests for tax refunds that are not uncommon in returns. Those shared characteristics, without more, do not establish by a preponderance of the evidence that Frederick and Willie willfully prepared additional fraudulent returns.[2] *See Cobb*, 842 F.3d at 1219.

## V. RESTITUTION

---

[2] In some cases, similarities between returns identified as fraudulent and other returns might be enough to establish the other returns as fraudulent—say, if the similarities rarely appear in returns or the pool of fraudulent returns is sizable. But here, the similarities by themselves are not sufficiently indicative of fraud to satisfy the government's burden.

11

The district court erred in ordering $3.5 million in restitution.  The district court based its award of restitution on its finding that Frederick and Willie are responsible for more than $3.5 million in tax loss.  Since the district court erred in determining the amount of tax loss, it also erred in ordering $3.5 million in restitution.

## VI. CONCLUSION

We affirm in part, vacate in part, and remand for resentencing.  We affirm Frederick's and Willie's convictions but vacate their sentences.  The district court did not constructively amend Frederick and Willie's indictment, did not err in limiting Frederick's cross-examination of a government witness, and did not err in allowing Frederick and Willie to proceed pro se at sentencing.  However, the court erred at sentencing in finding that Frederick and Willie are responsible for more than $3.5 million in tax loss and in ordering $3.5 million in restitution.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR RESENTENCING.**