John McFADDEN, Appellant

v.

UNITED STATES, Appellee.

No. 03–CF–205.

District of Columbia Court of Appeals.

Argued Nov. 29, 2007.

Decided April 3, 2008.

Corinne Beckwith, Public Defender Service, with whom, James Klein and Jaclyn S. Frankfurt, Public Defender Service, were on the brief, for appellant.

Patricia A. Heffernan, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, Frederick W. Yette, and Lisa Baskerville–Greene, Assistant United States Attorneys, were on the brief, for appellee.

Before KRAMER, BLACKBURNE–RIGSBY, and THOMPSON, Associate Judges.

BLACKBURNE–RIGSBY, Associate Judge:

██ Appellant John McFadden was convicted, following a jury trial, of one count of second-degree murder while armed, one count of possession of a firearm during a crime of violence, one count of possession of an unregistered firearm, and one count of possession of ammunition.[1] On appeal, he challenges the trial court's denial of his motion to suppress his oral confession on the grounds that he was not given his *Miranda* warnings.[2] Finding no error, we affirm.

## I.

In the early morning hours of February 9, 2000, Tonya Borges was shot to death in her apartment, and the gun used to kill her was found next to her body. Around noon that day, Ms. Borges's sister La-Shawn Anderson called Ms. Borges's boyfriend Mr. McFadden and asked him to come to the Sixth District Police station. Mr. McFadden arrived at approximately 2 or 3 p.m. driven and accompanied by his mother. After being told that Metropolitan Police Department ("MPD") Detective Willie Toland, the lead detective on the case, would not return for several hours,

---

1. Respectively, the citations are D.C.Code §§ 22–2401, 22–3202, 22–324(b), 6–2311(a), and 6–2361(3) (2001).

2. We are not persuaded by the government's argument that Mr. McFadden waived his argument that he was in custody prior to and during his meeting with Detective Leech, described *infra*. The suppression hearing transcript demonstrates that defense counsel raised these arguments sufficiently during the hearing and they were addressed by the trial court's suppression ruling. A movant is not required to renew his suppression argument at trial to preserve it for appeal. *See Waldron v. United States*, 219 F.2d 37, 37, 95 U.S.App. D.C. 66, 66 (1955) (applying analogous federal counterpart to D.C.Super. Ct.Crim. R. 12(b)(3)); *Dockery v. United States*, 853 A.2d 687, 694 (D.C.2004) (considering evidence from suppression hearing and trial); *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971) (decisions of the United States Court of Appeals for the District of Columbia Circuit prior to February 1, 1971, constitute the case law of the District of Columbia, which may be overruled by this Court sitting *en banc* only).

Mr. McFadden chose to wait for approximately four to five hours. He was unhandcuffed and unsupervised in an open interview room next to a street exit.

At approximately 6 p.m., Detective Toland and Lieutenant Marvin Lyons, who were unarmed and in plain clothes, spoke with Mr. McFadden for about thirty minutes. Detective Toland explained that they were investigating Ms. Borges's death and asked whether McFadden knew anything about it, to which Mr. McFadden responded that he was aware of the murder but that he did not have anything to do with it. Mr. McFadden responded that he had spoken with Ms. Borges around midnight on the night of her murder. Detective Toland explained that he wanted to swab Mr. McFadden's hands for gunpowder residue and to administer a computer voice stress analyzer ("CVSA") test, which would help determine if Mr. McFadden was being truthful. Mr. McFadden agreed to take both tests, and MPD Mobile Crime Officers administered the gunpowder residue test.

Later, Detective Toland ordered dinner for Mr. McFadden, who ate alone and unguarded in the open room for an hour and a half until approximately 9:30 p.m. Mr. McFadden left the interview room and walked across the hall unaccompanied to use the bathroom. Detective Arthur Leech was introduced to Mr. McFadden and conducted three CVSA tests in which Mr. McFadden answered that he did not have a Glock handgun and did not shoot Ms. Borges. Over the next ten minutes, Detective Leech, in a deliberate attempt to deceive, told Mr. McFadden that the test revealed that Mr. McFadden had a handgun and had shot Ms. Borges. Detective Leech told Mr. McFadden that there were different penalties for first- and second-degree murder, and that if Ms. Borges had

done or said something "that contributed to or caused this, you need to tell me, now what happened." Mr. McFadden responded "I guess she did," confessed, and described the murder three times. Mr. McFadden was not advised of his *Miranda* rights at the time he made his oral statements. Later that evening, at approximately 11:30 p.m., Detective Smith informed Mr. McFadden that he was under arrest and advised him of his *Miranda* rights by using a PD–47 rights card before taking a seven-page written statement from him.[3]

## II.

*Miranda*[4] warnings are "required only where there has been such a restriction on a person's freedom as to render him in custody." *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). "[A] noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that ... the questioning took place in a 'coercive environment.'" *Id.*

A finding of custody for *Miranda* purposes requires more than is required for a finding that a Fourth Amendment seizure has occurred. *See United States v. Turner*, 761 A.2d 845, 851 (D.C.2000); *see also Berkemer v. McCarty*, 468 U.S. 420, 439–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) ("not every seizure constitutes custody for *Miranda* purposes"). Custody turns on "whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Turner, supra*, 761 A.2d at 851 (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)). We must consider the totali-

---

**3.** Mr. McFadden is not challenging the admission of his written statement on appeal.

**4.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ty of the circumstances to determine how a "reasonable [person] in the suspect's position would have understood his or her situation." *Id.* (quoting *Berkemer, supra,* 468 U.S. at 442, 104 S.Ct. 3138).

■■■ On appeal from the trial court's denial of a motion to suppress a confession on *Miranda* grounds, "our role is to ensure that the trial court had a substantial basis for concluding that no constitutional violation occurred." *McIntyre v. United States,* 634 A.2d 940, 943 (D.C.1993). The trial court's legal conclusions regarding whether the defendant was in custody are reviewed *de novo. Morris v. United States,* 728 A.2d 1210, 1215 (D.C.1999). The trial court's underlying factual findings, however, are reviewed under the "clearly erroneous" standard, and they will be set aside only if they lack substantial support in the record. *Id.* We view the evidence adduced at the suppression hearing and admitted at trial in the light most favorable to the party that prevailed in the trial court, and must sustain any reasonable inference that the trial judge has drawn from the evidence. *Id.*; *Dockery, supra,* 853 A.2d at 694.

Mr. McFadden's main argument on appeal is that his case is factually similar to the case of *U.S. v. Gayden,* 492 A.2d 868, 872 (D.C.1985). *Gayden,* however, is both factually and legally distinguishable. As a threshold matter, we decided *Gayden* on Fourth Amendment seizure grounds and expressly declined to address Mr. Gayden's Fifth Amendment *Miranda* suppression argument. *Id.*; *see also In re I.J.,* 906 A.2d 249, 257 (D.C.2006) ("the Fourth Amendment inquiry is not the same as, nor does it ultimately decide the question of whether there was custody under the Fifth Amendment.").

The appellant in *Gayden* was held in a "cloistered" room without a direct exit, surrounded by the "constant company of armed police" and subjected to increasingly aggressive and accusatory statements, and the police officers introduced a new officer ("a fresh face") to him in order to encourage conversation. *Gayden, supra,* 492 A.2d at 872.

■■■ Unlike the situation in *Gayden,* the detectives in this case were not armed. Furthermore, the interview room was open, unguarded and adjacent to a direct exit to the street. Mr. McFadden was not in the "constant company" of police officers and was actually left alone unguarded for hours at a time. Nor was he subject to "increasingly aggressive and accusatory statements." Instead, the questioning was polite and conversational for the entire duration of Mr. McFadden's contact with police. Although the detectives focused their attention and efforts more and more on Mr. McFadden as the evening wore on, "a mere 'focusing' of an investigation upon a suspect [does not] entail the kind of coercion that triggers the *Miranda* requirements." *Beckwith v. U.S.,* 425 U.S. 341, 347, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976).

■■■ Here, viewing the totality of the circumstances, a reasonable person would not believe that his freedom was restrained to the degree associated with a formal arrest. *See Turner, supra,* 761 A.2d at 851 (citation omitted). Appellant came to the police station of his own accord [5] and chose to wait in an unguarded

---

5. *Cf. Mathiason, supra,* 429 U.S. at 494–95, 97 S.Ct. 711 (defendant who came voluntarily to police station, was informed he was not under arrest, and left station was not in custody). Although LaShawn Anderson testified that she called Mr. McFadden "in a rage" to inform him that her sister had died and that "he needed to get down to the precinct," and that Mr. McFadden arrived at the station a couple of hours later, Ms. Anderson testified that the police officers did not ask her to call Mr. McFadden.

room in close proximity to a direct exit to the street [6] for several hours before meeting with plain-clothed detectives. The detectives conversed with appellant in a polite manner,[7] told him they were just gathering information, and gave him food, drink, and unrestricted bathroom access.

 Although Mr. McFadden argues that neither he nor any reasonable person would have felt "free to leave" once Detective Leech confronted him with the test results and misrepresented that the results proved that Mr. McFadden was the perpetrator, Detective Leech's deception did not convert a noncustodial situation into a custodial one given the totality of the circumstances. A finding of a seizure under the Fourth Amendment's "free to leave" test is not dispositive of a finding of custody for *Miranda* purposes because the standard for when a suspect is in custody is a higher one. *See Berkemer v. McCarty*, 468 U.S. 420, 439–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *In re I.J., supra*, 906 A.2d at 261 ("When a reasonable person would believe that his or her freedom has been restrained as in a formal arrest, that person is in custody for Fifth Amendment purposes, regardless of the reasonableness of the basis for or scope of the interview conducted by the investigating officer, as measured by the Fourth Amendment."). Indeed, in *Mathiason, supra*, 429 U.S. at 494–95, 97 S.Ct. 711, the United States Supreme Court held that an officer's false statement that he has evidence of the defendant's guilt "has nothing to do with whether [the defendant] was in custody for purposes of the *Miranda* rule." *Mathia-*

son, *supra*, 429 U.S. at 494–95, 97 S.Ct. 711.

The officers' credited testimony, that they would not have prevented Mr. McFadden from leaving, is another factor that bears on the issue of whether he was in custody. *Cf. Stansbury v. California*, 511 U.S. 318, 325, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (considering officer's views if they were manifested to defendant and would have affected how a reasonable person in that position would perceive his "freedom to leave"). Therefore, the trial court properly concluded that no *Miranda* violation occurred that barred the admission of appellant's statements at trial.

*Affirmed.*

---

6. *Cf. Morris v. United States,* 728 A.2d 1210, 1212–22 (D.C.1999) (defendant not in custody when, *inter alia,* he was unrestrained in open interview room); *Johnson v. United States,* 616 A.2d 1216, 1228–31 (D.C.1992) (defendant not in custody when he sat unhandcuffed in interview room over the course of four hours, was left alone three or four times and was not frisked, and officers did not brandish

a weapon or subject him to increasingly aggressive interrogation, and defendant conceded polite atmosphere).

7. *Compare Johnson, supra,* 616 A.2d at 1228–31 *with Miley v. United States,* 477 A.2d 720, 721–24 (D.C.1984) (defendant in custody when officer drew his weapon and ordered him to "get out and come this way.").