Lloyd GARY, Appellant,

v.

UNITED STATES, Appellee.

No. 07–CM–717.

District of Columbia Court of Appeals.

Argued June 12, 2008.

Decided Aug. 7, 2008.

Judith A. Lovelace, Suitland, MD, for appellant.

James Smith, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, Mary B. McCord and Elizabeth Gabriel, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN, KRAMER and FISHER, Associate Judges.

GLICKMAN, Associate Judge:

Appellant Lloyd Gary was convicted of falsely representing himself as a member of the police force in violation of D.C.Code § 22–1406 (2001). He challenges the sufficiency of the evidence to support his conviction of this misdemeanor and the lawfulness of his sentence. We uphold appellant's conviction and remand for correction of his sentence.

## I.

■ On a sufficiency challenge, "we view the evidence and draw all reasonable inferences in the light most favorable to the government."[1] According to the government's evidence, appellant was arrested on May 10, 2007, following a confrontation with another motorist that began at a stop light on Sheriff Road in Maryland. Darrien Scott testified that appellant pulled his car up next to Scott's truck at the light, blew his horn, rolled down his window, and yelled "what[,] that m-f truck doesn't have turn signals on it?" Appellant complained that Scott had cut him off, which Scott denied. Scott then drove into the District of Columbia, followed by appellant. At some point, they stopped in the middle of a street and exited their vehicles. Scott noticed that appellant's car had a red light on the dashboard and that appellant was wearing a black hat with a golden star and a badge around his neck. Scott testified that appellant stood "in a position whereas he had a weapon on him and ... told me, 'you need to get back in your m-f vehicle before I lock you up.' "

Seeing appellant "reaching" for something (possibly a weapon) on his person, Scott re-entered his truck and drove away. Appellant followed him to a liquor store parking lot, where the two men again confronted each other outside their vehicles. According to Scott, appellant positioned his car so as to block him in and said, "Didn't I tell you to stay in your m-f vehicle?" Scott then saw the words "United States" above a piece of black tape on the badge around appellant's neck.[2] Scott decided to call 911, at which point appellant left the scene.

Metropolitan Police Department Officers Adams and Bradshaw were dispatched to the liquor store in response to Scott's call. Hearing Scott's description of an "older gentleman with a badge hanging around his neck," the officers were reminded of appellant, whom they knew from previous encounters. They went to appellant's

---

1. *McCoy v. United States,* 781 A.2d 765, 768 (D.C.2001) (citation omitted).

2. When the badge later was recovered by police, it was found that the tape covered the words "Bail Enforcement Agent."

house, where they saw a late model Volvo automobile that fit the vehicle description Scott had provided. Appellant emerged from his house. The officers observed "police equipment" on his belt. They confirmed that the Volvo belonged to appellant and asked him what had just occurred. Appellant responded, "Oh, you talking about the guy who tried to run me off the road?" Appellant claimed that after their confrontation on the road, Scott had followed him from Maryland to the liquor store. The officers placed appellant under arrest. From his person, they seized an "asp" (i.e., a police baton), handcuffs, a pepper spray holder, a badge, and an identification booklet stamped "National Institute for Bail Enforcement."

Appellant testified at trial that he has been a fugitive recovery agent for thirty years and a certified bail enforcement agent since 1992. As such, he explained, he is authorized to make arrests nationwide based on warrants given to him by law enforcement agencies. Appellant carried the "implements" found on him at the time of his arrest to assist him in executing those warrants. When he encountered Scott, appellant testified, he was wearing his badge because he was going to pick up a warrant. He was in a hurry and "foolishly" neglected to place his badge inside his shirt. Appellant claimed Scott cut him off in traffic on Sheriff Road and then followed him to the liquor store in the District of Columbia. Appellant testified that he told Scott, "I'll have you locked up," because he believed that Scott was driving while intoxicated. Appellant explained that when he reached for his belt he was planning to pull out his cell phone to call the police to have Scott arrested

In denying appellant's motion for a judgment of acquittal and finding him guilty of impersonating a police officer, the trial court credited Scott's account and relied on "an aggregate of factors," including: the badges on appellant's hat and neck and the police equipment on his belt; the emergency light on the dashboard of his car; and appellant's gestures, stance, and "display of authority" in his confrontation with Scott.

## II.

D.C.Code § 22–1406, a statute we have not construed previously, makes it a misdemeanor "for any person, not a member of the police force, to falsely represent himself as being such member, with a fraudulent design."[3] The offense thus has two elements: the defendant must (1) falsely represent himself to be a member of the police force, with (2) a fraudulent design. We conclude that the government presented sufficient evidence to prove both elements in this case.

As to the first element, although appellant did not tell Scott in so many words that he was a police officer,[4] the

---

3. Section 22–1406 is one of a trio of statutes dealing with impersonation of police officers. D.C.Code § 22–1404 (2001) provides that "[w]hoever falsely represents himself or herself to be a ... police officer ... and attempts to perform the duty or exercise the authority pertaining to ... such office" is guilty of a felony punishable by up to three years in prison. D.C.Code § 22–1409(b) (Supp.2007) provides that "[a]ny person who ... makes or attempts to make unauthorized use of ... the official badges, patches, emblems, copyrights, descriptive or designated marks, or other offi-

cial insignia of the Metropolitan Police Department" is guilty of a misdemeanor and subject to imprisonment for up to a year and a $1,000 fine.

4. Cf. *Williams v. United States*, 404 A.2d 189, 194 (D.C.1979) (prima facie case of false personation of a police officer in violation of predecessor to D.C.Code § 22–1404 where defendant "announced himself as a police officer, displayed a false badge as well as handcuffs, and attempted to exercise a police function").

trier of fact reasonably could find that appellant intentionally conveyed that impression by displaying a badge, having a red light on the dashboard of his car, threatening Scott with arrest, and otherwise acting with apparent law enforcement authority. As to the second element, we have said that " 'fraud' is a 'generic term which embraces all the multifarious means ... resorted to by one individual to gain advantage over another by false suggestions or by suppression of the truth.' "[5] Thus, to prove the defendant's fraudulent design, there must be evidence that the defendant impersonated a police officer to deceive another in order to gain some advantage thereby. But the advantage need not be monetary or even material in nature. The requirement is met in this case by the evidence that appellant portrayed himself as a police officer to induce Scott to comply with his wishes and get back in his truck and stay there.

### III.

The trial court sentenced appellant to 180 days of incarceration, execution of sentence suspended as to all but ten days, followed by one year of probation, and ordered him to pay a fine of $300. As appellant argues, and the government concedes, this was not a legal sentence.[6]

Appellant was convicted of a misdemeanor "punishable by imprisonment ... not exceeding 180 days, *or* by a fine not exceeding $1,000...." D.C.Code § 22–1406 (emphasis added). Where, as here, a

penal statute authorizes imprisonment or a fine only as alternatives, it violates the Double Jeopardy Clause of the Fifth Amendment to impose both penalties.[7] Consequently, while we affirm appellant's conviction, we remand for the trial court to correct the sentence it imposed. As appellant already has served his jail term (as well as his term of probation), the court must remit the fine; in addition, if appellant already has paid it (as his counsel represents to us), he is entitled to be reimbursed.

*So ordered.*

---

5. *In re Austin*, 858 A.2d 969, 976 (D.C.2004) (quoting *In re Shorter*, 570 A.2d 760, 767 n. 12 (D.C.1990) (citation omitted)).

6. In his brief, appellant also challenged some of the specific conditions of his probation. However, as appellant's counsel essentially acknowledged at oral argument, the completion of his term of probation has rendered this challenge moot.

7. *See Whalen v. United States*, 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *see also Mooney v. United States*, 938 A.2d 710, 723 (D.C.2007) (citing *Ex Parte Lange*, 85 U.S. (18 Wall.) 163, 176, 21 L.Ed. 872 (1874), for the proposition that "imposition of jail sentence *and* fine constituted double jeopardy where statute provide[d] for either sentence *or* fine") (emphasis in original).