Ronald SAVOY, Appellant,

v.

UNITED STATES, Appellee.

No. 06–CF–1605.

District of Columbia Court of Appeals.

Argued May 21, 2008.
Decided Oct. 1, 2009.

Thomas T. Heslep, Washington, DC, appointed by the court, for appellant.

Trena Carrington, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, Roy W. McLeese III, Mary B. McCord and Lynn E. Haaland, Assistant United States Attorneys, were on the brief, for appellee.

Before KRAMER and THOMPSON, Associate Judges, and STEADMAN, Senior Judge.

KRAMER, Associate Judge:

After a jury trial, appellant Ronald Savoy was convicted on July 20, 2005, of, *inter alia,* misdemeanor false impersonation of a police officer under D.C.Code § 22–1406 (2001), and possession of a prohibited weapon (blackjack) under D.C.Code § 22–4514(a) (2001). He appeals those convictions on the grounds that the trial court's jury instructions were erroneous and that the trial court erred in failing to suppress a statement appellant made prior to being read his *Miranda* rights. We affirm.

## I. Facts

On July 13, 2004, Metropolitan Police Department Officer James Boteler and his

partner Officer David Chumbley were in a marked patrol car driven by Officer Boteler. As they were traveling on Atlantic Street facing Livingston Road, they heard sirens. They did not initially see anything, but they subsequently saw appellant operating a blue Crown Victoria with lights flashing in the windows and in the grill. As the car went by, the officers heard a siren coming from it and a loud air horn. Appellant passed the officers. The officers then activated the lights and sirens of their own patrol car and pulled behind appellant. Appellant then proceeded to run two red lights and two stop signs while traveling at 50 to 60 miles per hour in a 25 mile per hour zone for five or six blocks.

Initially, the officers followed appellant because they thought that appellant was a police officer and that they would be backing him up on a call, but they soon realized that there was no call outstanding. Moreover, the car had Fraternal Order of Police (FOP) plates, which meant that the vehicle was a personal vehicle, not a police vehicle. Although the officers still believed that appellant might be an off-duty police officer responding to a personal emergency, they decided to conduct a regular traffic stop because it had become clear to them that they were not assisting another officer on a call.

At first, appellant motioned out of his car window with a waving motion, as though he wanted the officers to pull up next to him. The officers, however, in keeping with regular traffic stop procedure, positioned their vehicle behind appellant's. Officer Boteler approached appellant's car on the driver's side, while Officer Chumbley approached on the passenger side. Still believing that appellant might be an off-duty police officer, Officer Boteler asked appellant what department he was with. Appellant answered, "You know me. I'm with Metro P.D." While he said

this, appellant was wearing a badge around his neck on a chain like Officer Boteler's neck chain, but appellant had his right hand over the badge so that it was partially obscured. Officer Boteler told appellant to move his hand. When appellant did so, Officer Boteler saw that the badge stated "Big Mack Security Chief" with the number "001" on it. The officers then had appellant get out of the vehicle.

As appellant left the vehicle, the officers noted an open beer can in the center console of the car. Also, when appellant turned around after getting out of the car, Officer Boteler noticed in appellant's right rear pocket "the handle portion of what is known as a slapjack, which is basically a piece of leather with a large piece of lead at the end." Officer Boteler testified that a slapjack is an illegal weapon formerly used by the police in the 1950s and 60s. Officer Boteler described appellant's slapjack as a "blackjack, four or five inches, [with] five or six inches worth of handle" and stated that he saw "the bulge on the bottom half of the slapjack." Because the slapjack could be used as a weapon, the officers took it from appellant and asked him to step around and sit on the curb while they conducted the rest of the stop.

Officer Boteler then leaned into the car and noted that the beer can was cold and the yellow liquid inside the can smelled like alcohol. While he was doing this, he looked above the car's visor and saw a black plastic laminated parking permit that had the Metropolitan Police Department insignia on it and said "Police, official business." Officer Boteler recognized the permit as being the same kind that he had in his personal vehicle for when he needed to park in front of the courthouse to attend court.

Officer Boteler then noticed in the car's driver's side map pocket a Metropolitan Police Department ticket book. He

flipped through the ticket book and saw tickets written up for reasons that appeared fraudulent, including a purported parking ticket stating, "Warning. Don't park so close. Officer Friendly this time. Have a nice day." But one of the tickets appeared to be legitimate and was signed by Metropolitan Police Department Sergeant Urell Washington, who worked in the same district as Officer Boteler.

Officer Boteler took the parking placard and ticket book out of the car and asked appellant where he had obtained these police items. Appellant answered immediately, "Sergeant Washington gave them to me." But after a second or two, appellant contradicted himself and said that Sergeant Washington must have left them in his car. The officers then searched the rest of the car, including the backseat and the trunk.[1] When the officers were handcuffing appellant, he asked if the officers could "cut [him] a break" because he was Sgt. Washington's "boy." Appellant was then arrested. At trial he presented no evidence.

During the jury's *voir dire,* the trial court had referred to the prohibited weapon only as a "blackjack." Testimony during the trial referred to the weapon as either a "blackjack" or a "slapjack," but "slapjack" was used most frequently. The court's jury instructions referred to the object only as a "slapjack." No objection was made regarding the terminology change, however, and appellant's counsel conceded at the start of her closing statement that appellant was guilty of possession of a "slapjack."

## II. Impersonation of a Police Officer

Appellant argues that the trial court erred in instructing the jury regarding the charge of misdemeanor impersonation of a police officer because the court failed to instruct the jury that the "fraudulent design" element of the statute meant that the government had to prove that appellant acted either with the intent to benefit himself or the intent to mislead another into a course of action. To preserve a jury instruction issue for appeal, Super. Ct.Crim. R. 30 requires a party to "object[ ] thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." Because appellant has preserved this issue for appeal, we review for harmless error. We affirm.

■ D.C.Code § 22–1406 (2001) makes it a misdemeanor "for any person, not a member of the police force, to falsely represent himself as being such member, with a fraudulent design." Accordingly, the offense has two elements: "the defendant must (1) falsely represent himself to be a member of the police force, with (2) a fraudulent design." *Gary v. United States,* 955 A.2d 152, 154 (D.C.2008).[2]

■ The first element does not require the explicit language found in this case ("You know me. I'm with Metro P.D."). Indeed, we have previously held that a trier of fact reasonably could find that a defendant intentionally conveyed the impression that he or she was a police officer through acts, such as "displaying a badge, having a red light on the dashboard of his car, threatening [someone] with arrest, and otherwise acting with apparent law enforcement authority." *Id.* at 155. Be-

---

1. In appellant's trunk, the police found a bullet proof vest, a hand-held metal detector, a bottle of pepper spray, and a cigarette box that contained a leafy substance that field tested to be marijuana.

2. This case was decided several years after the trial in this case and, indeed, after oral argument on appeal.

cause appellant in this case made explicit representations of being a police officer, we perceive no difficulty with the first element, nor does appellant allege any.

■ As for the second element, fraud is a "generic term which embraces all the multifarious means ... resorted to by one individual to gain advantage over another by false suggestions or by suppression of the truth." *Id.* (citing *In re Austin,* 858 A.2d 969, 976 (D.C.2004)). "Thus, to prove the defendant's fraudulent design, there must be evidence that the defendant impersonated a police officer to deceive another in order to gain some advantage thereby. But the advantage need not be monetary or even material in nature." *Id.* While simply reading the plain language of the statute—which is "clear and concise; it contains no words which are obscure, ambiguous or which are used in some restricted, special, or technical sense which the average layman cannot be expected to understand"—was held to be a sufficient jury instruction for this crime in a case decided in 1951,[3] *Wheeler v. United States,* 89 U.S.App.D.C. 143, 143, 190 F.2d 663, 663 (1951) (holding that simply reading the misdemeanor impersonation of a police officer statute is an adequate jury instruction), the trial court did not choose to simply read the statute in this case and instead read an instruction that allowed the jury to convict appellant if it found

that he was trying to fool others into thinking he was an officer even if he lacked the intent to gain an advantage thereby.[4] Thus, the jury instruction given was erroneous.

Nonetheless, that error was harmless. In *Gary, supra,* we found the fraud element was satisfied by evidence "that appellant portrayed himself as a police officer to induce [the complainant] to comply with his wishes and get back in his truck and stay there." 955 A.2d at 155. Here, the fraud element is satisfied by evidence that appellant portrayed himself as a police officer by saying that he was "with Metro P.D." in order to avoid getting into trouble for running stop signs and red lights. Indeed, as the government notes, "no rational jury, properly instructed, would have failed to convict appellant." Accordingly, we affirm. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.")

### III. Blackjacks and Slapjacks

■ D.C.Code § 22–4514(a) (2001) prohibits most people from possessing, *inter alia,* "any instrument or weapon of the kind commonly known as a blackjack...."[5] Appellant argues that (a)

---

**3.** The statutory language for this crime has remained essentially unchanged since at least 1929. *See* D.C.Code § 303 (1929) ("It shall be a misdemeanor ... for any person, not a member of the police force, to falsely represent himself as being such a member, with a fraudulent design.").

**4.** The judge instructed the jury, in relevant part, as follows:
 ... he did so with fraudulent design.
 "Fraudulent" means a false or fraudulent representation, any statement or assertion that concerns a material or important fact

or material or important aspect of the matter in question....
 "Design" means to form a plan or scheme of, conceive and arrange in mind, originate, mentally plan out, contrive.

**5.** Exceptions are made for "members of the Army, Navy, Air Force, or Marine Corps of the United States, the National Guard, or Organized Reserves when on duty, the Post Office Department or its employees when on duty, marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly-appointed law enforcement officers ...

the trial court constructively amended his indictment by substituting "slapjack" for "blackjack" in his jury instructions for Possession of a Prohibited Weapon (blackjack) under that section because slapjacks are not listed in that section, or in the alternative (b) the instruction, as given, "made up a new crime" where one did not exist. Because appellant failed to properly object to this jury instruction before the jury retired to consider its verdict as required by Super. Ct.Crim. R. 30, we review the instruction for "plain error." *Brown v. United States,* 881 A.2d 586, 593 (D.C.2005). For the reasons below, we find no error at all.

Appellant cites a website run by a self-defense enthusiast for the proposition that blackjacks and slapjacks are different weapons and that, therefore, possession of a slapjack is not a crime in this jurisdiction, and it was error to use the word "slapjack" in the jury instructions. However, the Historical Dictionary of Law Enforcement defines the blackjack as having two types: the slapjack and the convoy. "Today's blackjack is a flat or round piece of lead covered in leather. The flat incarnation is called the slapjack.... The round blackjack is the lighter of the two and is known as a convoy." Mitchel P. Roth & James Stuart Olson, Historical Dictionary of Law Enforcement 31 (2001). Likewise, The American Dictionary of Criminal Justice defines a slapjack as a type of blackjack, defining a blackjack as "[a] short bludgeon consisting, at the striking end, of an encased piece of lead or some other heavy substance and, at the handle end, a strap or springy shaft that increases the force or impact when a person or object is struck; *includes but is not*

*limited to the ... slapjack.*" Dean J. Champion, The American Dictionary of Criminal Justice: Key Terms and Major Court Cases 27 (3d ed. 2005) (emphasis added). While it might have been useful for the government to present a witness to testify as to the fact that the terms "blackjack" and "slapjack" are often used interchangeably (as they were in this trial), this does not change the fact that appellant's conviction was appropriate. He was convicted for possession of a blackjack, and the evidence showed that he was in possession of a blackjack (albeit of the slapjack variety). Moreover, the plain text of the statute applies to "any instrument or weapon of the kind commonly known as a blackjack," D.C.Code § 22–4514(a), and appellant himself notes that "[n]o one at the trial seemed to be aware of any distinction between a blackjack and a slapjack." Therefore, substituting the word "slapjack" for "blackjack" in the jury instructions did not, as appellant argues, "ma[k]e up a new crime."

 Nor was there an improper constructive amendment in this case. Constructive amendment occurs when there has been "a *broadening* [of] the possible bases for conviction." *United States v. Miller,* 471 U.S. 130, 138, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). This can occur when the government produces facts at trial different than those before the grand jury. *See, e.g., Wooley v. United States,* 697 A.2d 777, 784 (D.C.1997) (possession of cocaine instead of heroin). Because a slapjack is a kind of blackjack, however, substituting the word "slapjack" for "blackjack" did not create "[a] *broadening* [of] the possible bases for conviction." *Miller, supra,* 471 U.S. at 138, 105 S.Ct.

employees of the United States duly authorized to carry such weapons, banking institutions, public carriers who are engaged in the business of transporting mail, money, securi-

ties, or other valuables, wholesale dealers and retail dealers licensed under § 22–4510." D.C.Code § 22–4514(a).

1811. Rather, the substitution merely made the instructions for the jury consistent with the terminology that it had heard most. Accordingly, we find no error with this jury instruction and affirm the trial court on this point.

## IV. Appellant's Statements While in Police Custody

Appellant also argues that the trial court erred in failing to suppress his incriminating statements to police regarding the parking placard and ticket book because, although he was not formally arrested, appellant was not free to leave and "the actions taken were akin to full arrest."

 On appeal from the trial court's denial of a motion to suppress a confession on Miranda[6] grounds, our role is to ensure that the trial court had a substantial basis for concluding that no constitutional violation occurred. McFadden v. United States, 945 A.2d 1203, 1206 (D.C.2008); McIntyre v. United States, 634 A.2d 940, 943 (D.C.1993). The trial court's legal conclusions regarding whether the defendant was in custody are reviewed de novo. McFadden, supra, 945 A.2d at 1206; Morris v. United States, 728 A.2d 1210, 1215 (D.C.1999). The trial court's underlying factual findings, however, are reviewed under the clearly erroneous standard, and they will be set aside only if they lack substantial support in the record. McFadden, supra, 945 A.2d at 1206. Accordingly, "[w]e view the evidence adduced at the suppression hearing and admitted at trial in the light most favorable to the party that prevailed in the trial court, and must sustain any reasonable inference that the trial judge has drawn from the evidence." Id.

 Persons temporarily detained pursuant to ordinary traffic stops are not "in custody" for Miranda purposes. Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Indeed, a finding of custody for Miranda purposes requires more than is required for a finding that a Fourth Amendment seizure has occurred. McFadden, supra, 945 A.2d at 1205 (citing United States v. Turner, 761 A.2d 845, 851 (D.C.2000); Berkemer, supra, 468 U.S. at 439–40, 104 S.Ct. 3138 (not every seizure constitutes custody for Miranda purposes)). Accordingly, "[c]ustody turns on whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Id. at 1205 (internal citation omitted). We must consider the totality of the circumstances to determine how a reasonable [person] in the suspect's position would have understood his or her situation. Id. at 1205–06.

 Viewing the evidence in the light most favorable to the prevailing party (here, the government) and considering the totality of the circumstances, we find no error in the trial court's conclusion that appellant was not in custody for Miranda purposes.[7] The evidence showed that appellant had been pulled over by police for a normal traffic stop in the manner used for a normal traffic stop. Therefore, appellant needed to show that he was either formally arrested at the time of his statements regarding the placard and ticket book, or that the officers had restrained his freedom of movement to the degree of formal arrest at that time. Berkemer, supra, 468

---

**6.** Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**7.** While the trial court did not make explicit findings of fact regarding appellant's oral motion to suppress the statements, the trial court stated that it had "heard the argument by the prosecutor and the defense and ... reviewed all of the evidence in the record in its entirety" before denying appellant's motion.

U.S. at 439–40, 104 S.Ct. 3138. Here, appellant was not formally arrested at the time of his statement, and simply asking appellant to sit down on the curb while they searched his car does not rise to the level of having restrained his freedom of movement to the degree of formal arrest. Therefore, he was not in custody for *Miranda* purposes. *Id.* Accordingly, we affirm the trial court's decision to deny the motion to suppress the statements on *Miranda* grounds.

For the foregoing reasons, the verdict of the trial court is

*Affirmed.*