# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 1, 2009

## STATE OF TENNESSEE v. PAUL RICHARDSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-03372      James C. Beasley, Jr., Judge**

---

**No. W2008-02506-CCA-R3-CD   -   Filed September 29, 2010**

---

The Defendant-Appellant, Paul Richardson, was convicted by a Shelby County Criminal Court jury of aggravated robbery, a Class B felony, aggravated burglary, a Class C felony, aggravated assault, a Class C felony, and unlawful possession of a handgun by a convicted felon, a Class E felony. He was sentenced as a persistent offender to twenty-five years for the aggravated robbery conviction, ten years for the aggravated burglary conviction, and fourteen years for the aggravated assault conviction. He was also sentenced as a career offender to six years for the unlawful possession of a handgun by a convicted felon conviction. The court ordered the sentences for the aggravated robbery and aggravated assault convictions to be served consecutively and the remaining sentences to be served concurrently, for an effective sentence of thirty-nine years. In addition, all of the sentences in this case were ordered to be served consecutively to a prior federal sentence for unlawful possession of a handgun by a felon. On appeal, Richardson argues that (1) the trial court erred in charging the jury on aggravated assault by intentionally or knowingly causing another to reasonably fear imminent bodily injury when the indictment charged him with aggravated assault by knowingly causing bodily injury to another, and (2) the evidence was insufficient to support his convictions. Upon review, we affirm the judgments for aggravated robbery, aggravated burglary, and unlawful possession of a handgun by a convicted felon, but we reverse and vacate the judgment for aggravated assault and remand this matter for the purpose of allowing the trial court to restructure the manner of service of the remaining sentences to include consecutive sentences, if the court deems it to be appropriate.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court**
**Affirmed in Part, Reversed and Vacated in Part, and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the Defendant-Appellant, Paul Richardson.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William L. Gibbons, District Attorney General; Dean DeCandia and Paul Hagerman, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

**Trial.** Jenell Allen testified that she was at her house on Auburn Street with some friends, her nieces and nephews, and her friends' children on the evening of December 24, 2003. She said that there were approximately fourteen or fifteen children at her home that night. Allen said she was styling her friend's hair in the "hair room" when she heard the children in the front of the house say, "Y'all ain't the police." Before she could walk to the front of the house, a young man dressed in "all black" with "a camera or a badge" around his neck walked into the room she was in and said, "[W]here [is] the money, where [is] the weed." Allen told the man that she did not know what he was talking about. He also asked her, "Where J-Mack at [sic]." Allen explained that an individual who went by the name of "J-Mack" lived across the street from her. When the man pointed a black pistol with "a long barrel" in her face, Allen said, "[I]t scared the mess out of me." The man told her he was going to her kill her, and she gave him $100 to $200. Allen also said that Pandora Powell, who was also in the room, gave the man around $20. Allen said that Powell was so afraid during the incident that "she used the rest room [sic] on herself." Allen was unsure whether anyone else in the room gave the man money. After taking the money, the man ran out of the house. Allen said that she did not see the other man who was with the person that robbed her because the other man did not enter the room where she was working.

On April 15, 2004, the police showed Allen a photographic line-up, and she identified Richardson as the man that robbed her during the incident. Allen stated that Richardson looked different at trial than he did in the photographic lineup. She explained that his hair was different and he was bigger in the photograph than he was at trial. Nevertheless, Allen identified Richardson at trial as the person that robbed her on December 24, 2003.

Anita Williams testified that she was related to Allen and was at Allen's house on December 24, 2003, when the robbery occurred. Williams said that she was on the telephone when a man wearing a mask cracked open Allen's front door and then quickly shut it. When she heard the children screaming, she dropped the telephone and ran back to the "hair room" where she encountered a different man, who was not wearing a mask. This man pointed a "silver" handgun "with a pearl handle" at her and asked her if she knew where "J-Mack" was. She said she did not, and she dropped her purse. The man grabbed her purse and walked out of the house. Williams said that she identified Richardson as the man that robbed her in a photographic lineup on March 26, 2004. She also identified Richardson at trial as the man that robbed her. Williams said that three or four weeks prior to trial, an investigator

for the defense showed her several pictures, and she again identified Richardson as the person that robbed her.

Martesha Johnson, Allen's niece, testified that she was sixteen years old at the time of the incident on December 24, 2003. She said she heard a knock at the door and before she could open it, two men came into Allen's house. She said that there was a third man that stayed outside the house. Both men asked for "J-Mack." Johnson said that "J-Mack" was not there. Then the two men asked everyone to move to one side of the house. She said the light-skinned man had a handgun and the dark-skinned man had a rifle. They both were dressed in black and wore bullet proof vests, and one of the men wore a mask. She said that she initially thought that the two men were the police. She said that the light-skinned man came into the house first and then the dark-skinned man wearing the mask entered the house. Both men went to the "hair room," and Johnson heard a lot of screaming. She said that the two men were back in that room for about four minutes before they both ran out of the house and drove off in a white van. At the time, Johnson thought that the person the men were referring to as "J-Mack" was Allen's husband, who lived at Allen's house on Auburn Street but was not present during the December 24, 2003 incident. She later admitted that she did not know that there was another person who was called "J-Mack" that lived across the street from Allen.

Lynette "Lynn" Johnson, Martesha Johnson's mother, testified that she was at Allen's home during the incident on December 24, 2003. She said a man came inside the house asking for "J-Mack." When Allen told him that "J-Mack" was not there, the man turned around to walk out, and Lynn saw that he had a gun. She asked Allen if she knew the man and informed her that he had a gun. When the man heard her comment, he came back into the room and put the gun up to Allen's head, demanded money, and asked her where the drugs were located. Allen told him that they did not have anything there and that "J-Mack" was not there. Then the man pointed "a big black" handgun at her and asked if she had any money, but Lynn did not have any money to give him. Then the man pointed the gun at another girl and "pulled her shirt down" so that he could take the $100 that she had in her cleavage. Lynn said that Allen's husband was called "J-Mack" and that she did not know that a man who lived across the street from Allen also went by "J-Mack." She described the man that robbed her as five feet, seven or eight inches tall. She said he was "small, thin" with "[l]ight skin" and "thick brows" and a "low haircut."

Pandora Powell testified that she was at Allen's house at the time of the incident on December 24, 2003. Powell said that she had her head down while Allen was styling her hair. When she looked up, she saw a man with a "chrome" .44 magnum in the room. The man began screaming, "Where's the money, where's the money." Powell said that the man then "handled [Allen] real rough[,] and he threw her down." She also said that the man

-3-

"smacked" Allen "a couple of times." Powell said that the man then came over to her and "start[ed] searching [her] in [her] brassiere and in [her] pockets." She said that he recovered $20 from her bra. Powell said that she believed "he was probably [going] to kill all of us because he didn't have a mask on." She said that the police showed her a photographic lineup approximately three months after the incident. She quickly identified Richardson in the line-up because she "couldn't forget his face." Powell said that she was "100 percent sure" that Richardson was the man that robbed her. She also identified Richardson at trial as the person who robbed her.

Prior to the close of the State's case-in-chief, the following stipulation was read to the jury:

> The State of Tennessee and the defendant Paul Richardson by and through counsel of record having agreed as follows hereby stipulate to the following facts: Paul Richardson as named here and after in the stipulation is the same Paul Richardson presently on trial in this court in Indictment 05-03373 for aggravated robbery, aggravated burglary, aggravated assault and convicted felon in possession of a handgun.

> Paul Richardson and the State hereby agree that as of December 24th [sic] of 2003, Paul Richardson had been convicted of aggravated robbery; a felony involving the use of violence. Specifically, Paul Richardson was convicted on February 10th [sic], 1998, in Division 10 of Criminal Court of Shelby County, Tennessee under docket number 97-07016.

The defense then presented three witnesses at trial: Edward Richardson, Wanda Washington, and Julie Buck. Paul Richardson, the Defendant-Appellant, did not testify.

Edward Richardson, Paul Richardson's brother, testified that he specifically recalled December 24, 2003, because Paul was having trouble with his girlfriend's son, who had allegedly committed a robbery. Edward said he picked up Paul around 2:00 p.m. that day, and they went to visit his other brother but returned to Paul's house by 4:00 or 4:30 p.m. Edward said that he stayed at Paul's house with him from 4:30 p.m. to 11:15 or 11:20 p.m. when he went home to be with his children on Christmas Eve. He said that he knew that Paul did not leave his home because he did not have a car. Edward said that he particularly remembered December 24, 2003, because it was "[r]eally one of the [few] Christmas[es] we ever got to spend together as adults." In addition, Edward acknowledged that he had been convicted of a misdemeanor marijuana charge four years earlier and that he was with his brother at the time that he was arrested for this drug charge. Edward also admitted that although his

-4-

brother did not have a valid driver's license, his brother owned a white Chevrolet Corsica at the time of the incident.

Wanda Washington testified that she dated Paul Richardson for approximately two years. She said that she specifically remembered December 24, 2003, because she and her family were together socializing all day and night on Christmas Eve. She also said that she remembered that particular Christmas Eve because Paul got shot shortly thereafter. Washington stated that, as far as she knew, Paul Richardson was present at the Christmas Eve party at her house the entire time. However, she also said that there were large numbers of people coming "in and out" during the party.

Julie Buck, who was declared an expert in the field of psychology, testified that she had a doctorate in psychology and worked as an assistant professor in criminal justice at Weber State University in Utah. Dr. Buck stated that she had published work and had spoken at conferences in the area of eyewitness memory and eyewitness identifications. She said that in situations where a gun is involved, individuals often have "weapon focus" where they can often "describe in great detail the gun but might have trouble describing the face [of the person holding the gun]." She added that "high levels of stress tend to decrease [an individual's] ability to recall and remember details of an event later on." Moreover, she said that if there are two or more perpetrators involved in an incident, the victim's attention is divided, making it more difficult for the victim to remember each perpetrator's face. Dr. Buck acknowledged that photographic lineups were "not inherently suggestive" and stated that proper police procedures "decrease the chances that somebody will wrongfully identify someone." She admitted that she had neither met nor discussed this case with Allen, Williams, or Powell.

Following trial, the jury convicted Richardson of aggravated robbery, aggravated burglary, aggravated assault, and unlawful possession of a handgun by a convicted felon. He received an effective sentence of thirty-nine years. Richardson filed a motion for new trial on June 5, 2008 and filed an amended motion for new trial on October 10, 2008. The trial court denied these motions by written order on October 10, 2008, and Richardson subsequently filed a timely notice of appeal.

**I. Jury Charge Different from Indictment.** Richardson argues that the trial court erred in instructing the jury on aggravated assault by intentionally and knowingly causing another to reasonably fear imminent bodily injury when the indictment charged him with aggravated assault by knowingly causing bodily injury to another. He argues that aggravated assault by reasonable fear of imminent bodily injury is an alternative theory, rather than a lesser included offense, of aggravated assault by bodily injury. Citing State v. Atta Najjar, No. W2003-00329-CCA-R3-CD, 2004 WL 123213, at *5 (Tenn. Crim. App., at Jackson, Jan.

21, 2004), Richardson further asserts that the trial court committed reversible error when he "was not put on notice that he would have to defend against the particular theory of aggravated assault read by the trial court to the jury." He acknowledges that he did not make a contemporaneous objection when the trial court made the jury instruction regarding aggravated assault; however, he argues that "[a]n erroneous or inaccurate jury charge, as opposed to an incomplete jury charge, may be raised for the first time in a motion for a new trial and is not waived by the failure to make a contemporaneous objection." State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005) (citing State v. Lynn, 924 S.W.2d 892, 898-99 (Tenn. 1996)). He further contends that his failure to make a contemporaneous objection at the time of the instruction cannot be construed as consent to amend the indictment. See Tenn. R. Crim. P. 7(b); State v. Stokes, 24 S.W.3d 303, 306-07 (Tenn. 2000); Atta Najjar, 2004 WL 123213, at *6. In addition, he notes that no motion was made by the State to amend the indictment and his consent to amend the indictment is not present in the record.

In response, the State contends that because Richardson was charged with the greater offense of aggravated assault by bodily injury he was put on notice of the lesser offense of aggravated assault by reasonable fear of imminent bodily injury. See Howard v. State, 578 S.W.2d 83, 85 (Tenn. 1979) ("[A]n offense is necessarily included in another if the elements of the greater offense, as those elements are set forth in the indictment, include, but are not congruent with, all the elements of the lesser."). It also argues that the trial court's instruction was not erroneous pursuant to Faulkner, and the defense's failure to make a contemporaneous objection resulted in waiver of the issue on appeal. See Faulkner, 154 S.W.3d at 58. Moreover, the State asserts that "the court instructed the jury on aggravated assault by causing the victim to fear imminent bodily injury under section (b)(2) of the test announced by our Supreme Court in Burns v. State, 6 S.W.3d 453 (Tenn. 1990), because, under the facts of this case, aggravated assault by causing the victim to fear imminent bodily injury is 'a less serious harm' than aggravated assault by causing bodily harm." The State asserts that "the issue of whether aggravated assault by causing the victim to fear imminent bodily injury as a lesser offense of aggravated assault by causing bodily injury is an issue of first impression in this Court[.]" However, it contends that subsection (b)(2) of the Burns test supports this finding under the facts of the instant case.

Tennessee Code Annotated section 39-13-102 (2003) defines aggravated assault:

(a) A person commits aggravated assault who:

(1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:

(A) Causes serious bodily injury to another; or

(B) Uses or displays a deadly weapon[.]

Accordingly, "[a]ggravated assault . . . consists of three elements: (1) mens rea; (2) commission of an assault as defined in 39-13-101; and (3)(a) serious bodily injury or (b) use or display of a deadly weapon. State v. Hammonds, 30 S.W.3d 294, 298 (Tenn. 2000) (internal footnote omitted).

In order to fully understand the elements of aggravated assault, we must also consider the elements of assault as defined by Tennessee Code Annotated section 39-13-101 (2003):

(a) A person commits assault who:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

In other words, the offense of simple assault can be committed one of three ways. However, none of these three forms or means of committing the offense of simple assault are considered lesser included offenses of the others.

Here, the trial court initially questioned the parties regarding the proper jury instruction for the aggravated assault count:

THE COURT: All right. I have a question, then. Bodily injury. [The] [a]ggravated assault count alleges bodily injury.

[STATE]: We just withdraw that indictment, Judge, that count of the indictment.

THE COURT: Well, I'm of the opinion that under Burns, that would be State [v.] Burns, part B-1 or B-2, I'm sorry, a less serious harm or risk of harm to the same person, property or public interest is an included offense.

In reviewing aggravated assault, there are three types of aggravated assault. There's aggravated assault by causing bodily injury. There's aggravated assault by causing the victim to be in reasonable fear of imminent bodily injury. There is aggravated assault by an offensive or provocative physical contact. All of those being done with a deadly weapon, make that an aggravated assault.

Bodily injury in part A of the aggravated assault charge, I don't think there's been any proof of bodily injury. And I believe the indictment in question deals with Ms. Powell. Ms. Powell testified that she was frightened. She felt that she was going to die under the circumstances. In my reading of Burns and my reading of part B-2 of Burns, a less serious harm or risk of harm to the same person would be an included offense.

Obviously fear of imminent bodily injury is less harm to a person than serious bodily injury or bodily injury, as well as an offensive touching or provocative contact or touching would be a less serious harm than even fear of death. Those to me are lesser included offenses even within the frame of aggravated assault which causes bodily injury.

I don't think that there's been any proof of bodily injury. But I do think that Ms. Powell testified that she was in fear of her life, afraid that she was going to be killed. I believe there was even some testimony, if I'm not mistaken, from Ms. Allen; I don't think Ms. Powell testified to it, but I believe Ms. Allen testified that Ms. Powell lost control of her bodily functions.

And I think in light of the testimony that the fear of imminent bodily injury expressed by Ms. Powell would be a less serious harm than bodily injury as alleged in the indictment. So I intend to charge the jury on aggravated assault by placing the victim in fear of imminent bodily injury as included in the original charge. And I also intend to charge the jury that they can consider physical contact by the contact being especially offensive or provocative.

-8-

She testified that the defendant frisked her, touched her breasts, went into her bra and retrieved money from her bra. And I think under the circumstances, that is less serious than bodily injury and less serious than fear of death. And so I intend to charge aggravated assault by offensive and provocative physical contact as included in the indictment.

But I will withdraw from the jury the element of bodily injury. So my intent is to charge aggravated assault part B and part C or sub-B and sub-C in part A. Simple assault B and C. All of those are included under the aggravated assault charge. . . .

Any comments? Any other requests? Lesser includeds? Or any special requests for special charges?

[Defense]: We would request an instruction on alibi, Your Honor.

The Court: I will charge alibi.

[Defense]: We're just requesting the pattern.

The indictment charging aggravated assault contains the following language, in pertinent part:

[That Paul Richardson] on December 24, 2003, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully and knowingly commit an assault on PANDORA POWELL and by use of a deadly weapon, cause bodily injury to the said PANDORA POWELL, in violation of T.C.A. 39-13-102, against the peace and dignity of the State of Tennessee.

Although the indictment specifically referred to the bodily injury element of assault, the trial court's jury instruction only included the reasonable fear of imminent bodily injury and extremely offensive or provocative conduct elements of misdemeanor assault:

Count three of the indictment charges the offense of aggravated assault. The included offenses in that charge which you will consider are aggravated assault by causing the victim to fear imminent bodily injury, aggravated assault by causing extremely offensive or provocative physical contact with the victim, assault by causing the victim to fear imminent bodily injury and assault

-9-

by causing extremely offensive or provocative physical contact with the victim.

. . . .

Any person who commits the offense of aggravated assault is guilty of a crime.

For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements: That the defendant intentionally or knowingly caused another to reasonably fear imminent bodily injury; or that the defendant intentionally or knowingly caused physical contact with another and a reasonable person would regard that contact as extremely offensive or provocative; and that the defendant used or displayed a deadly weapon.

Following trial, the jury reached the following verdict regarding the aggravated assault charge: "We, the jury, find the defendant guilty of aggravated assault by causing the victim to reasonably fear imminent bodily injury as included in the third count of the indictment."

In considering this issue, we note that every defendant has the constitutional right to be informed of "the nature and cause of the accusation." U.S. Const. amend. VI, XIV; Tenn. Const. art. I, § 9. According to Tennessee Code Annotated section 40-13-202 (2003), an indictment "must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." The Tennessee Supreme Court has held that an indictment is valid if it contains sufficient information "(1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997) (citations omitted). "[S]pecific reference to a statute within the indictment may be sufficient to place the accused on notice of the charged offense." State v. Sledge, 15 S.W.3d 93, 95 (Tenn. 2000) (citing State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999); Ruff v. State, 978 S.W.2d 95 (Tenn. 1998)). However, there is no requirement that an indictment allege a specific theory of liability in order to give proper notice to the accused. State v. Lemacks, 996 S.W.2d 166, 172 (Tenn. 1999); see also T.C.A. § 40-13-206(a) (2003) ("When the offense may be committed by different forms, by different means or with different intents, such forms, means or intents may be alleged in the same count in the alternative.").

A defendant has a "'constitutional right to a correct and complete charge of the law.'" State v. Litton, 161 S.W.3d 447, 458 (Tenn. Crim. App. 2004) (quoting State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990), superseded by statute on other grounds as stated in State v. Reid, 91 S.W.3d 247, 291 (Tenn. 2002)). When reviewing challenged jury instructions, we must look at "the charge as a whole in determining whether prejudicial error has been committed." In re Estate of Elam, 738 S.W.2d 169, 174 (Tenn. 1987) (citation omitted); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). "A charge should be considered prejudicially erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997) (citing State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995); Graham v. State, 547 S.W.2d 531 (Tenn. 1977)). Because questions regarding the propriety of jury instructions are a mixed question of law and fact, the standard of review is de novo with no presumption of correctness. State v. Smiley, 38 S.W.3d 521, 524 (Tenn. 2001).

"[A] defendant cannot legally be convicted of an offense which is not charged in the indictment or which is not a lesser offense embraced in the indictment." State v. Cleveland, 959 S.W.2d 548, 552 (Tenn. 1997) (citing State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996)). This court has held that there must be continuity between the indictment and the evidence presented at trial in order for a conviction to stand:

> Having the right to be informed of the criminal charge that he or she is to meet at trial, the accused cannot be tried for or convicted of an offense not charged in the indictment or information. Put simply, not only must the government prove the crime it charges, it must charge the crime it proves.

State v. Goodson, 77 S.W.3d 240, 244 (Tenn. Crim. App. 2001) (citing 41 AM. JUR. 2D Indictments and Informations § 258 (1995); Cleveland, 959 S.W.2d at 552) (emphasis added). However, the indictment may be amended with the defendant's consent. Tenn. R. Crim. P. 7(b)(1). In order for an indictment to be amended pursuant to Rule 7(b), "an oral or written motion to amend the indictment should be made, and the defendant's oral or written consent to the motion must be clear from the record." Stokes, 24 S.W.3d at 303. Even without the defendant's consent, a trial court may allow an indictment to be amended before jeopardy attaches "if no additional or different offense is charged and no substantial right of the defendant is prejudiced." Tenn. R. Crim. P. 7(b)(2). However, "after an indictment has been returned, its charge may not be broadened or changed except by action of the grand jury." Goodson, 77 S.W.3d at 244 (citing U.S. Const. amend. V; Tenn. Const. art. I, sec. 14; United States v. Miller, 471 U.S. 130, 148, 105 S. Ct. 1811, 1820 (1985); Stirone v. United States, 361 U.S. 212, 215, 80 S. Ct. 270, 272 (1960)). This court emphasized the difference between constructive amendments and variances between the indictment and the evidence:

-11-

[C]ourts [must] distinguish between constructive amendments of the indictment, which are reversible per se, and variances between indictment and proof, which are evaluated under the harmless error doctrine. The accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged. In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment. If, on the other hand, the variation between proof and indictment does not effectively modify an essential element of the offense charged, "the trial court's refusal to restrict the jury charge to the words of the indictment is merely another of the flaws in trial that mar its perfection but do not prejudice the defendant."

Goodson, 77 S.W.3d at 244 (quoting U.S. v. Adams, 778 F.2d 1117, 1123 (5th Cir. 1985) (internal citations omitted)).

We conclude that the trial court's erroneous instruction on aggravated assault resulted in a constructive amendment of the indictment. See Atta Najjar, 2004 WL 123213, at *6 (holding that a constructive amendment of the indictment occurred where the indictment charged the defendant with aggravated rape by force or coercion while armed with a weapon but the trial court charged the jury on the alternative element of aggravated rape by bodily injury and the defendant was convicted on the bodily injury element of the offense); see also Goodson, 77 S.W.3d at 244-45 (holding that a constructive amendment of the indictment occurred when the jury was allowed to convict the defendant for driving on a revoked license despite the fact that the proof at trial established that the defendant was driving on a suspended license, which constituted a separate and distinct offense). Although the indictment referenced the code section for aggravated assault, it specified that Richardson caused bodily injury to Powell using the language found in Tennessee Code Annotated section 39-13-101(a)(1) (2003). See Atta Najjar, 2004 WL 123213, at *5. Because the indictment in this case specifies "a particular means of committing the offense in the indictment, the defendant was not given proper notice that the jury would be allowed to find him guilty under a different element of the offense." Id.; see also State v. Michael A. Drake, No. M2003-02520-CCA-R3-CD, 2004 WL 2636717, at *5 (Tenn. Crim. App., at Nashville, Nov. 17, 2004) (holding that "[t]he State's affirmative decision . . . to indict the appellant in such a specific manner and then proceed at the second phase of trial to offer an additional theory [of aggravation] . . . prevented the appellant from preparing an adequate defense to the charge" and that a bill of particulars was unnecessary since "the record demonstrate[d] that the appellant reasonably thought he knew precisely with what he was charged and prepared his defense accordingly"). In other words, the language of the indictment failed to give Richardson adequate notice that the State was prosecuting him for aggravated assault

under the underlying assault elements of reasonable fear of imminent bodily injury or extremely offensive or provocative contact. See T.C.A. § 39-13-101(a)(2), (a)(3) (2003).

The indictment in this case could have generally charged Richardson with assaulting the victim while using or displaying a deadly weapon. See State v. Griffis, 964 S.W.2d 577, 591 (Tenn. Crim. App. 1997) ("As a general rule, it is sufficient to state the offense charged in the words of the statute, or words which are the equivalent to the words contained in the statute."), perm. to appeal denied (Tenn. Dec. 22, 1997). In addition, the indictment could have charged Richardson with the offense of aggravated assault by citing the code section 39-13-102 without specifying the particular means in which the underlying assault was committed under section 39-13-101(a). See Hammonds, 30 S.W.2d at 302 (holding that an indictment charging aggravated assault was sufficient because it alleged the proper mens rea, the assault, and the use of a weapon, even though it failed to state whether the prosecution was intending to prove that the defendant committed the underlying assault through bodily injury, reasonable fear of imminent bodily injury, or extremely offensive or provocative contact); see also Wyatt v. State, 24 S.W.3d 319, 324 (Tenn. 2000) (holding that an indictment charging attempt was sufficient where it cited the proper statute but neither referred to the attempt statute's numbered subsections nor specified a course of conduct establishing the attempt to kill). Finally, although less desirable, the indictment could have charged Richardson with aggravated assault where the means of committing the underlying assault were listed in the alternative. See State v. Jamie John Schrantz, No. W2002-01507-CCA- R3-CD, 2003 WL 22888910, at *2 (Tenn. Crim. App., at Jackson, Dec. 2, 2003) (stating that although the assault offense in that case was charged in the alternative, which is permitted under section 40-13-206(a), "the better practice is to allege alternative modes of assault in separate counts."). Any of these three options would have been acceptable, though they might have prompted a motion for a bill of particulars. See Tenn. R. Crim. P. 7(c) ("On defendant's motion, the court may direct the district attorney general to file a bill of particulars so as to adequately identify the offense charged."). Instead of utilizing these options, however, the State charged Richardson with aggravated assault where the underlying assault was committed by bodily injury. See T.C.A. § 39-13-101(a)(1) (2003). Despite the language in the indictment, the trial court declined to charge the jury on the bodily injury element of the underlying assault because it found that the proof at trial did not support this element. Instead, the court instructed the jury on aggravated assault under the underlying assault elements of reasonable fear of imminent bodily injury and extremely offensive or provocative physical contact. See id. § 39-13-101(a)(2), (3) (2003).

We agree with the defense's contention that the court's jury instruction on the aggravated assault charge was "erroneous" and "inaccurate" rather than "incomplete." See Faulkner, 154 S.W.3d at 58; see also Atta Najjar, 2004 WL 123213, at *5 ("[T]he trial court's erroneous jury instruction allowed the jury to convict the defendant on an element not

-13-

charged in the indictment."). Consequently, Richardson was not required to make a contemporaneous objection and was allowed to raise this issue for the first time in his motion for new trial. See Faulkner, 154 S.W.3d at 58. Moreover, we cannot conclude that the variance between the indictment and proof was harmless, given that the trial court's erroneous instruction resulted in Richardson's conviction of an element that was not charged in the aggravated assault count of the indictment. See Atta Najjar, 2004 WL 123213, at 5. The record shows that the State believed that there was a fatal variance between the indictment and the proof, which is why it offered to dismiss the aggravated assault count when the trial court mentioned that the evidence did not support bodily injury of the victim. Regardless of the State's actions on this point, we feel that the trial court should have dismissed the aggravated assault charge since the evidence was insufficient to go to the jury on this count.

We also agree that Richardson did not consent to an amendment of the indictment. See Tenn. R. Crim. P. 7(b); Stokes, 24 S.W.3d at 306-07; Atta Najjar, 2004 WL 123213, at *6. There was no oral or written motion to amend the indictment in this case, and Richardson's consent to such a motion does not appear in the record. Finally, we conclude that the State's argument that Richardson was somehow put on notice of the lesser elements of the offense when he was charged with the greater offense of aggravated assault by bodily harm is unpersuasive. The Burns decision presented two tests: one for determining which offenses were lesser included offenses and one for determining whether a jury instruction should be given for offenses found to be lesser included offenses. See Burns, 6 S.W.3d at 466-69. The Burns decision pertained to lesser included offenses and did not discuss the issue of discrepancies between the elements of the charged offense and the elements of that offense given in the jury instruction. Id. Lesser included offenses, which are by their very nature separate and distinct from the charged offense, and elements of the charged offense itself are not the same, and any attempt to make them synonymous under Burns must fail. We conclude that the court's erroneous jury instruction on aggravated assault constructively amended the indictment in this case because the jury was allowed to convict Richardson on a different element from that with which he was charged in the indictment. See Atta Najjar, 2004 WL 123213, at *6. Accordingly, we reverse and vacate the judgment for aggravated assault and remand this matter for the purpose of allowing the trial court to restructure the manner of service of the remaining sentences to include consecutive sentences, if the court deems it to be appropriate.

**II. Sufficiency of the Evidence.** Richardson contends that the evidence at trial was insufficient to support his convictions. In the event that our decision to reverse and vacate the aggravated assault conviction is not upheld by the Tennessee Supreme Court, we have analyzed whether the evidence was sufficient to support all of the convictions, including the

-14-

conviction for aggravated assault, despite the variance between the indictment and the proof on this count.

Richardson specifically contends that the evidence in this case was insufficient to establish his identity as that of the perpetrator. He asserts that Allen, Williams, and Powell were under extremely high levels of stress at the time of the incident and contends that their stress as well as the women's focus on the weapon during the incident prevented them from making a correct identification of the perpetrator. He also emphasizes the fact that he presented two alibi witnesses at trial who testified that he was with them at the time of the offenses in this case. Finally, Richardson argues that the evidence was insufficient to support his conviction for unlawful possession of a handgun by a convicted felon because the indictment number listed in the stipulation was incorrect.

In response, the State notes Richardson's concession that three eyewitnesses identified him as the perpetrator. It argues that because the jury accredited the identification of the three eyewitnesses, Richardson effectively concedes that the State presented sufficient proof for the jury to find that he was the perpetrator. Moreover, the State emphasizes that all three of the eyewitnesses identified Richardson as the perpetrator both in photographic lineups and during trial, and these six positive identifications were more than sufficient to support the convictions in this case. Regarding the conviction for unlawful possession of a handgun by a convicted felon, the State argues that the stipulation regarding the previous conviction for aggravated robbery was unaffected by the fact that the indictment number was off by a single digit. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from the evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt."

A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt; therefore, a defendant on appeal has the burden of showing that the evidence is insufficient to support the jury's verdict. State v. Thacker, 164 S.W.3d 208, 221 (Tenn. 2005) (citing State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in the State's favor. Bland, 958 S.W.2d at 659 (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973)). Issues regarding the credibility of witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the jury as the trier of fact, and this court does not re-weigh or re-evaluate the evidence. Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn. 1993)). Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)), perm. to appeal denied (Tenn. Nov. 13, 1990).

"The identity of the perpetrator is an essential element of any crime." State v. Robert Wayne Pryor, No. M2003-02981-CCA-R3-CD, 2005 WL 901140, at *3 (Tenn. Crim. App., at Nashville, Apr. 19, 2005) (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving "the identity of the defendant as the perpetrator beyond a reasonable doubt." Id. (citing State v. Sneed, 908 S.W.2d 408, 410 (Tenn. Crim. App. 1995)). The identity of the defendant as the perpetrator may be established by direct evidence, circumstantial evidence, or a combination of the two. Thompson, 519 S.W.2d at 793. As relevant here, "[t]he credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) (citing State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993), perm. to appeal denied (Tenn. Feb. 22, 1994)), perm. to appeal denied (Tenn. Dec. 27, 1999). The identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. Strickland, 885 S.W.2d at 87 (citing State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982), perm. to appeal denied (Tenn. June 21, 1982)). Furthermore, the jury may reject an alibi defense. Crawford, 635 S.W.2d at 705. "The defense of alibi presents an issue of fact determinable by the jury, as the exclusive judges of the credibility of the witnesses in support of the defense, and of the weight to be given their testimony." Id. (citing Green v. State, 512 S.W.2d 641 (Tenn. Crim. App. 1974), perm. to appeal denied (Tenn. May 20, 1974)).

Aggravated robbery, as relevant here, is a robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" T.C.A. § 39-13-402(a)(1) (2003). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Id. § 39-13-401(a) (2003).

Aggravated burglary is defined as a "burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." Id. § 39-14-403(a) (2003). As is applicable to this case, a person commits burglary who, without the effective consent of the property owner, "[e]nters a building and commits or attempts to commit a felony, theft or assault[.] Id. § 39-14-402(a)(3) (2003).

In order to convict a person of aggravated assault as relevant in this case, the State must prove beyond a reasonable doubt that the individual "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . [u]ses or displays a deadly weapon." Id. § 39-13-102(a)(1) (B) (2003). Section 39-13-101(a)(1) (2003) defines assault as "[i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another[.]" Section 39-13-101(a)(2) (2003) alternatively defines assault as "[i]ntentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury[.]"

Richardson acknowledges that Allen, Williams, and Powell positively identified him as the perpetrator in this case. Because these three eyewitnesses identified him not only in photographic lineups but also at trial, we conclude that there was more than sufficient evidence to establish Richardson as the perpetrator in this case. Regarding the aggravated robbery charge, the proof at trial established that Richardson stole money from Allen while displaying a deadly weapon. Regarding the aggravated burglary charge, the evidence also established that Richardson entered Allen's house without her effective consent and committed the felony of aggravated robbery. We conclude that the evidence at trial is sufficient to support Richardson's convictions for aggravated robbery and aggravated burglary. Regarding the aggravated assault charge against Pandora Powell, the proof at trial established that Powell first saw Richardson when he entered the "hair room" carrying a "chrome" .44 magnum. She then witnessed Richardson throw Allen down before he reached into Powell's brassiere and took twenty dollars from her. Powell testified that she believed that Richardson was going to kill them all because he was not wearing a mask. Accordingly, in the event that the Tennessee Supreme Court determines that there was not a constructive amendment of the indictment on this charge, we conclude that the evidence was sufficient to convict Richardson of aggravated assault by fear of imminent bodily injury. However, we also conclude that no proof was presented at trial to support Richardson's conviction under the element of aggravated assault by bodily injury as charged in the indictment.

Richardson also argues that the evidence is insufficient to support his conviction for unlawful possession of a handgun by a felon because the stipulation at trial regarding this offense contained an error, namely that the indictment number in the instant case was 05-03372 rather than 05-03373. As relevant here, in order to convict a person of the offense of unlawful possession of a handgun by a convicted felon, the State must prove beyond a reasonable doubt that the defendant: (1) possessed a handgun and (2) had been convicted of

a felony involving the use or attempted use of force, violence or a deadly weapon. See id. § 39-17-1307(b)(1)(A) (2003). We agree with the State that the discrepancy in the stipulation is merely a clerical error that does not affect the validity of the stipulation. Moreover, we agree that Richardson does not contest that he was actually convicted of aggravated robbery, the underlying offense, on February 10, 1998. Finally, we agree that Richardson's failure to raise a contemporaneous objection regarding the stipulation resulted in waiver of this issue. See Tenn. R. App. P. 36(a). Accordingly, the evidence is sufficient to support this offense.

## CONCLUSION

Upon review, the judgments for aggravated robbery, aggravated burglary, and unlawful possession of a handgun by a convicted felon are affirmed. However, because a constructive amendment of the indicted charge of aggravated assault in Count 3 occurred, we reverse and vacate the judgment for aggravated assault and remand this matter for the purpose of allowing the trial court to restructure the manner of service of the remaining sentences to include consecutive sentences, if the court deems it to be appropriate.

_____
CAMILLE R. McMULLEN, JUDGE